## ARCHA JACKSON v. STATE.

No. A-2493. Opinion Filed June 3, 1916.

(157 Pac. 945.)

1. **EVIDENCE—Relevancy—Flight.** Evidence that the defendant escaped from custody and became a fugitive from justice is admissible as tending to show guilt, but the defendant may offer proof to show his reason or motive for such escape and flight.

2. **CORROBORATION—Statement Consistent With Testimony.** Evidence of statements made previous to the trial by a witness consistent with his testimony is not admissible in support of his testimony.

3. **RAPE—Statutory Rape—Evidence.** In a prosecution for statutory rape, evidence reviewed and held sufficient to support the verdict.

*Appeal from District Court, Tillman County;*
*Frank Mathews, Judge.*

Archa Jackson was convicted of the crime of rape and appeals. Affirmed.

*Wilson & Roe,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J.    This appeal is from a judgment of the District Court of Tillman county rendered on the 16th day of March, 1915, in pursuance of a verdict convicting the defendant, Archa Jackson of rape in the second degree, and assessing his punishment at imprisonment in the penitentiary for the term of one year.

The information charges that the defendant committed the crime of rape upon the person of Ruth F. Mollenkopp, a female over the age of sixteen years and under the age of eighteen and of previous chaste and virtuous character, and not the wife of the defendant.

The evidence shows that the prosecutrix, a school girl, lived with her mother and step-father in the town of Davidson; that at the time charged she was a few weeks over seventeen years of age.

She testified that she met the defendant for the first time on Saturday the 17th day of October, 1914, the next evening he called at her home to drive her to church and as they started off he told her that they would take a drive before going to church, and then drove out in the country a couple of miles, returning to her home about ten o'clock that evening.    That before they returned that night the defendant had sexual intercourse with her three times; that the acts were forcible and without her consent; that when they started off he gave her some chewing gum that had dope on it and it made her drowsy and helpless; that when she returned she told her mother that the defendant had mistreated her and the next morning told her what had occurred. That the defendant was the only man that ever had sexual intercourse with her.

The mother of the prosecutrix testified that her daughter was in a dazed condition when she returned home and she said that the defendant had mistreated her.    That the next morning her daughter told her what had occurred while she was with the defendant.

The evidence further shows that the defendant was arrested the following Wednesday, and that day escaped from the custody of the arresting officer and crossed over Red river into Texas and was there the next day again taken into custody.

As a witness in his own behalf the defendant admitted the acts of sexual intercourse testified to by the prosecutrix but claimed that said acts of intercourse were with her full and free consent. He admitted having the chewing gum but denied there was any dope on it. That he was a married man but had separated from his wife about a week after their marriage.

Elba Hopkins, a witness for the defendant testified that he was sixteen years of age; that in September, 1914, he met the prosecutrix one evening about sun-down in a blackberry patch near her home and had sexual intercourse with her.

On cross examination he stated that at that time he did not know that under the law he could not be prosecuted for the crime of rape.

In rebuttal the prosecutrix testified that the testimony by Elba Hopkins was entirely false and without foundation, and several witnesses testified that the so-called blackberry patch was in plain view of several nearby houses.

The errors assigned and argued are based upon exceptions taken to rulings of the court rejecting evidence on the part of the defendant and question the sufficiency of the evidence to support the verdict.

It appears that when the defendant was testifying as a witness in his own behalf the following proceedings were had:

"Q. You heard the testimony of Mr. Castleberry, that after you were arrested and before you had made bond that you left there and went to Texas, is that a fact? A. Yes.

"Q. Why did you leave? A. I was scared I guess. When he brought me to town we had a conversation and he told me,—

"Now the state objects to any conversation or anything Castleberry might have told him.

"Which is by the Court sustained.'

"To which the defendant excepts and states as follows:

"Comes now the defendant at this time and offers to show the reason for the defendant leaving the State of Oklahoma before the bond was made, and offers to show the following facts: That he was arrested by the undersheriff or constable, T. N. Castleberry, and that on the way to town Castleberry told him that there was no hope for him; that he had a son who was charged with the same offense, and that he was sentenced to five years in the penitentiary, and that it didn't make any difference whether the girl was of previous chaste and virtuous character or not; that he was guilty of rape if he had had intercourse with her.

"Which offer is by the court refused. To which the defendant excepts.

"Q. You say you went to Texas because you were scared? A. Yes.

"Q. What was you scared of? A. It was the first time I was ever arrested and I wanted to get to where my father was to make bond and Mr. Castleberry told me,—

"Now the state objects to what Castleberry told him.

"Which is by the court sustained.

"To which the defendant excepts."

We are of the opinion that there is nothing here that presents prejudicial error.

In the case of *Robinson* v. *State,* 8th Okla. Cr. 667, 130 Pac. 121, it is said:

"The reason why evidence of flight or an escape, after the commission of a crime, is admitted in evidence is, as has often been said, based upon observations of human conduct summed up in the saying that the wicked flee when no man pursueth. In other words, the fact of the escape is evidence of a consciousness of guilt. Of course, the presumption may be rebutted by evidence explaining the defendant's reason for the escape. Then it is for the jury to decide whether it was due to a consciousness of guilt, or to the reasons given by him. 1 Wigmore on Evidence, section 276."

In this case it appears that the court permitted the' defendant to testify that the motive which influenced him in making his escape was to get' to where his father was in order to make bond.

It is also claimed that the court erred in refusing to permit the defendant to prove a previous statement of the witness Elba Hopkins consistent with his testimony.

It appears from the record that the' witness Elba Hopkins was asked by counsel for the defendant the following question:

"Q.  Now at any time before the charge was filed against Jackson had you told anyone about this occurrence?"

An objection by the county attorney to the question was sustained.  No exception was taken to the ruling of the court.

Upon his cross examination he was asked who he had been· telling about what he was going to swear to and answered that he had told Abb Herrel before the case started.  The defendant called Abb Herrell as a witness and without objection he was permitted to testify that three or four weeks before the defendant was charged with this offense the witness Hopkins had remarked to him "that he did business with this girl a night or two before that."

He was the nasked:

"Q.  Did he tell you the circumstances under which it occurred?  A.  He told me she called him öff the railroad track into the berry patch just outside of the right of way.

"Now the State objects to this testimony for the reason that it is incompetent, irrelevant and immaterial and hearsay and an attempt to bolster up the witness' testimony.

"The Court:  Objection sustained.  The defendant excepts."

Evidence of statements made previous to the trial by a witness consistent with his testimony is not admissible in support of his testimony.  The effect of proof of previous consistent statements could only be to corroborate the testimony of the witness under oath by his own words uttered when under no such solemn obligation to speak the truth.

See *Conner* v. *State*, 18 Colo. 373, 33 Pac. 159, 25 L. R. A. 341, 36 Am. St. Rep. 295, and *Rogers* v. *State*, 88 Ark. 451; 115 S. W. 156, 41 L. R. A. (N. S.) 857.

Prof. Wigmore says:

"When the witness has merely testified on direct examination, without any impeachment, proof of consistent statements is unnecessary and valueless. The witness is not helped by it; for, even if it is an improbable or untrustworthy story, it is not made more probable or more trustworthy by any number of repetitions of it. Such evidence would be both irrelevant and cumbersome to the trial."

Wigmore on Ev. vol. 2, sec. 1124.

The evidence offered was hearsay and clearly inadmissible. The objections made were therefore properly sustained.

As to the sufficiency of the evidence to sustain the verdict it is only necessary to say that as a witness the defendant admitted every fact necessary to his conviction, except the previous chastity of the prosecutrix which is a material element of the crime charged, and must be alleged and proved beyond a reasonable doubt and in this case the court so instructed the jury. The proof of the previous chastity of the prosecutrix in this case was ample and controverted only by the testimony of the witness Hopkins.

We are inclined to think that the palpable perjury of the witness Hopkins, the only witness testifying for the defendant, exclusive of the defendant himself, gives weight to rather than detracts from the proof on the part of the state.

We find no error in the record justifying a reversal of the case, and the judgment of the court below is therefore affirmed.

ARMSTRONG and BRETT, JJ., concur.