JESS COATS v. STATE.

No. A-8694.    May 18, 1934.
(32 Pac. [2d] 955.)

Wm. D. Powell, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen. (J. H. Lawson, of counsel), for the State.

DAVENPORT, J. The plaintiff in error was convicted in the district court of Cotton county of robbery and sentenced to serve a term of five years in the state penitentiary. The parties hereinafter will be referred to as they appear in the trial court.

The substance of the testimony on behalf of the state shows the prosecuting witness, Sam Biggs, was running a restaurant in the city of Walters; that he slept in the restaurant; some time around 3:30 the morning of the 21st of November, 1933, Biggs was robbed of $5; in accomplishing the robbery, Biggs was struck with a piece of lumber about 4 feet long, 4 inches wide, and ½ inch thick, the result of the wound necessitating Biggs being taken to the hospital and treated by a physician. The proof further shows that after the robbery Biggs' restaurant was examined and a hatband was found on the floor of the bedroom with blood on it; blood was also found on the piece of lumber alleged to have been used by the robber. The officers, after securing this information, went to the home of George Howard and found Howard and Charlie Coats in bed asleep. About 6:15 a. m., the defendant was arrested at the home of a man by the name of Richards, where the defendant's sweetheart lived.

It is further shown by the evidence that at the time the defendant was arrested he had blood on his shoes and shirt, and that he was intoxicated. When defendant was arrested, he tried to explain the blood on his clothing, claiming he had been hit on the side of the jaw causing his mouth to bleed. The testimony further shows that earlier in the evening before Biggs was robbed, the defendant,

Charlie Coats, and George Howard had gone to the Biggs restaurant and had stolen a half gallon of whisky.

Biggs claims he was asleep in his restaurant and felt somebody put their hands in his ribs, and that he was unconscious for some time; he was struck about three times on the left arm, and three times across the face; the $5 he lost was taken from his watch pocket in his pants; he was in bed with his shirt and pants on. He saw them find the hatband, and said he had seen it on November 21, 1933, on the floor of his bedroom; it had blood on it which witness said came from his face bleeding.

Witness identified the liquor that had been stolen from him, and stated the money had been taken from him by force and without his permission. Witness further stated he had seen George Howard wearing the hatband found in his room at a Rodeo that was held in Walters on Armistice day.

George Howard testifying on behalf of the state said:

"I have lived in Walters 25 years, in about one block of the Biggs place; I saw the defendant, Jess Coats, the night of the alleged robbery about 1 o'clock in the morning, in a restaurant run by a man named Clark; defendant stated he was going to take a sandwich and some milk to some one; he was gone about fifteen or 20 minutes; I had started north when Coats caught up with me; while we were walking near the Biggs place of business he said, let's look for Biggs' whisky; we found the whisky in an open space about five or ten steps from the door of the Biggs building; I saw Biggs at the counter of the restaurant and he looked like he was asleep; he had his head against the west wall, and defendant said, 'You reckon he has any dough?' We went back to my room and took a couple of drinks and ate some chicken, it was then about 2 o'clock in the morning; Charlie Coats and I remained at our home; the defendant said he had a date with a girl; he

tried on an overcoat of mine and my big hat, and left wearing my hat." Witness identified the hat worn by the defendant; he also identified the hatband found at the scene of the robbery as being the hatband that was on his hat at the time the defendant left with it. Witness further stated: "I was not at the Biggs restaurant after we got the whisky; when defendant left my home he took some liquor with him."

Rachael Richards stated her home was in Walters—

"I have lived two years in the southeast part of town; I know Jess Coats, the defendant; he passed through my room about 12:30 the morning of November 21, 1933, with a bottle of something and a sandwich for my sister Ruby; at that time I did not see any blood on his clothes or shoes; the defendant roomed at our house; he went out about 15 minutes later and returned home between 3:20 and 4 and went to bed and spent the remainder of the night."

George Beach stated he was a night watchman at Walters on November 21, 1933; he was called to the north end of town; when he arrived a man by the name of Stapps told him about a man being knocked in the head; he found Sam Biggs about 3:30 a. m., he saw the hatband in the Biggs place of business, and took Biggs to the hospital; Biggs was covered with blood, it looked like his nose was badly injured; Biggs told him he had lost some money.

Tracy Daugherty stated:

"I am a deputy sheriff; 20 minutes before four the morning of November 21, 1933, I received a call from George Beach; I drove to the hospital and saw Beach and the man, Sam Biggs, who had been robbed; I made an investigation for the supposed robber, got a description, and finally located him at the Richards home where I arrested him; George Howard and Charlie Coats had already been arrested; when we found the defendant he was covered with bed clothes; we found the liquor in his room that had been stolen from Biggs; the defendant had on a shirt

and a pair of pants; there were blood spots on the front of his shirt and collar, and spots of blood on his shoes; an examination showed there were spots of blood on the collar and sleeve of defendant's coat; I searched him and found four $1 bills and a little change; the collar of the shirt was wet—indicating it had been washed."

The defendant, testifying in his own behalf, admitted being with the parties when they got the whisky at the Biggs place during the latter part of the night, and claims he had a fight with Biggs, and struck him with a piece of plank but did not rob him— "My brother, George Howard, and myself came to his place to purchase whisky and had a racket there over the whisky that had been stolen". His brother Charlie Coats testified in substance the same as did the defendant.

George Howard, testifying for the state, stated when defendant left his house he and Charlie Coats remained there; they did not go back to the Biggs restaurant any more that night; defendant wore his hat when he left his home. This is the substance of the testimony.

The first assignment discussed by the defendant is his assignment that the information fails to charge a crime against the defendant. This court has repeatedly held that an information which informs the defendant of the offense with which he is charged with such particularity as will enable him to prepare for his trial, and so defines and identifies the offense that the defendant, if convicted or acquitted, will be able to defend himself in case he is indicted or an information filed against him for the same offense, by pleading the record of a former conviction or acquittal, is sufficient as against a demurrer. The demurrer was properly overruled.

It is next insisted by the defendant that the evidence is insufficient to sustain a conviction. The evidence in

this case is circumstantial but every circumstance and fact connected with the robbery points toward the defendant as being the guilty party. The record discloses defendant knew the prosecuting witness, knew the location of his business; went with his brother and George Howard to steal Biggs' whisky; later on as they passed the restaurant the defendant asked Howard if he thought the fellow had any dough; he later left the Howard home wearing a hat belonging to Howard, the band of which was found in the room where Biggs was sleeping, with blood on it, and on the floor; and also on the board that Biggs had been struck with; when defendant was taken into custody they found blood stains on his clothing; he had four $1 bills and some small change and Biggs was robbed of five $1 bills.

This court has passed upon the question of the sufficiency of the evidence so often that it seems useless to cite authorities. Beginning with the earlier opinions and coming on down to the present time, it has held that, where the evidence and the reasonable and logical inferences and deductions to be drawn from it are sufficient to convince the jury beyond a reasonable doubt of the guilt of the defendant, this court will not disturb the verdict for insufficiency. Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Underwood v. State, 36 Okla. Cr. 21, 251 Pac. 507; Bond v. State, 53 Okla. Cr. 224, 11 Pac. (2d) 200.

The jury is the exclusive judge of the weight of the evidence, and if there is a clear conflict in the evidence, or it is such that different inferences can properly be drawn from it, this determination will not be interfered with unless it is clearly against the weight of the evidence or appears to have been influenced by passion or prejudice. Cole v. State, 18 Okla. Cr. 430, 195 Pac. 901; Richards v. State, 22 Okla. Cr. 329, 211 Pac. 515.

In Strong v. State, 42 Okla. Cr. 248, 275 Pac. 385, in the second paragraph of the syllabus, this court said:

"A motion for new trial, based on an allegation that the evidence does not support the verdict of the jury, is addressed, first, to the sound discretion of the trial court, who has seen and heard the witnesses testify, and who must necessarily know a great deal more about many facts and circumstances produced at the trial, which cannot be written into a record, than an appellate court can by reading the record after it is written. And when a trial court has considered and passed upon such an issue, it comes to this court only on the proposition that as a matter of law the verdict is contrary to the evidence."

The defendant next contends that the court prevented him from having a fair and impartial trial for the reason that the court did not instruct the jury on his theory of his defense. The record shows that the defense of the defendant was that he did not commit the robbery, and that he was not guilty. His contention that he had a fight with the witness Biggs over the stolen property is not a defense to a charge of robbery, therefore, he had no theory upon which the court could predicate an instruction. If the defendant was not satisfied with the instructions of the court, it was his duty to prepare such instructions as he believed applicable to his defense and ask the court to give them, and if the court refuses to give them, to save his exceptions and incorporate his exception in a motion for a new trial, and the question will then be properly before the court on appeal. Merriott v. State, 18 Okla. Cr. 247, 194 Pac. 263.

It is next contended by the defendant that he did not have a fair trial for the reason that two of the jurors who had formerly had commissions as deputy sheriffs served on the jury. The fact that a man called for jury service has at one time prior to the time he is called for jury serv-

ice held some kind of a deputy sheriff commission does not disqualify him to serve on the jury. The record in this case shows the defendant was tried by a fair and impartial jury.

The record has been carefully examined, and it is the opinion of the court that the defendant had a fair and impartial trial; that the information is sufficient to advise the defendant of the charge against him; that the court properly instructed the jury as to the law applicable to the facts. There are no errors in the record warranting a reversal. The judgment of the trial court is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.