## LLOYD GRABLE v. STATE.

No. A-9098.　Feb. 19, 1937.
(65 Pac. [2d] 418.)

Mullen & Brett, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DAVENPORT, P. J.　Lloyd Grable, the plaintiff in error, who will hereinafter be referred to as the defendant, was by information jointly charged with Oscar Smith, Roy Smith, W. F. Cummings, Millard Pack, and Daniel Smothers with the crime of attempting to rob the First National Bank of Fletcher, Okla., by the use of firearms; was tried separately, convicted, and his punishment fixed at hard labor in the state penitentiary for life. Motion for new trial was filed, considered, overruled, and excep-

tions duly saved. From the judgment and sentence of the trial court, the defendant, Lloyd Grable, has appealed, alleging that in his trial the trial court committed eleven errors. Among the errors assigned are the following:

"That the court erred in denying the plaintiff in error herein a new trial; the court erred in overruling the plaintiff in error's motion in arrest of judgment; the verdict, judgment and sentence in this case is contrary to law and contrary to the evidence; and that the verdict of the jury is contrary to both the law and the evidence."

There are other errors assigned, but the assignments above set out are the only errors that it is deemed necessary to consider.

The record is voluminous, and it would serve no useful purpose to set out the testimony in full. Suffice it to say that the substance of the testimony shows that on August 16, 1933, the First National Bank of Fletcher, Okla., was organized and doing business; that on said date two men appeared in the lobby of the bank and demanded the cashier to hold up his hands, that they were going to rob the bank, or words to that effect; the cashier dropped behind a safety plate he had under the cashier's window to protect any one from shots that might be fired, and when he did so the shooting began; several shots were fired in the bank, but none of them took effect or injured any one; the parties left the bank without securing any funds, and went out and got in a car where there were some other parties and drove away.

George Littlefield, cashier of the bank, identified the defendant as being one of the parties that came in the bank. Prior to the time of the attempted robbery of the bank, the parties stopped at a filling station near Fletcher and bought two gallons of gas from a woman who identified the defendant as being one of the parties in the car that drove toward Fletcher leaving the filling station.

In the afternoon or evening after the attempted bank robbery, the parties were followed to the home of a man by the name of John Avery, and in the Avery home the defendant was found in bed ostensibly asleep; in the same room with the defendant was W. F. Cummings, one of the parties with this defendant charged with the attempted bank robbery; others of the party were around the house and in the neighborhood. When the officers entered the room where Cummings and the defendant were, they demanded them to hold up their hands, and Cummings obeyed promptly, but the defendant was slow and got up on the side of the bed and wanted know what it was all about, and did not get up off the bed until one of the deputies told the sheriff, who was between him and the defendant, to step aside and he would cut him in two with his gun. The bed was examined and an automatic pistol found on the bed. At least three other parties charged with the defendant have entered pleas of guilty and are now serving time in the state penitentiary.

The defendant testifying for himself denies he had anything to do with the attempted robbery or that he was present when the attempt was made; he states he had made arrangements with Mr. John Avery to drive out to his house and get a car belonging to him and bring to his garage in Oklahoma City, and overhaul it for him. Mr. Avery denies he had any understanding with the defendant to overhaul his car. The defendant admits he was at the Avery home when arrested, but insists he was there to get the Avery car to overhaul it, and that he had been there the greater part of the day. The wife of Avery denies he was at her home at the noon hour, the day of the alleged attempted robbery.

The defendant is an automobile mechanic and had a shop in Oklahoma City. All of the testimony from the

morning prior to the robbery up to the time the defendant and other parties were arrested in the afternoon or evening placed the defendant with one or more of the parties charged with the attempted robbery, and the only denial the defendant makes is that he had nothing to do with the attempted robbery; was not present at the bank when the attempt was made; and that he knew nothing about what the other parties intended to do; that he did not know when they left the Avery home, or returned, and did not know a robbery had been attempted. The foregoing is in substance the testimony.

There is a clear conflict in the evidence in this case. Positive testimony that the defendant was one of the parties who attempted to rob the bank, and positive testimony that when some of the boys were arrested at the Avery home that the defendant was one that was taken into custody, and then the defendant's denial of having any connection with the attempted robbery. This conflict in the evidence was a question solely for the jury.

Beginning with the early opinions and coming on down to the present time, this court has held that where the evidence and reasonable and logical inferences and deductions to be drawn from it are sufficient to convince the jury beyond a reasonable doubt of the guilt of the defendant, this court will not disturb the verdict for insufficiency. Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Underwood v. State, 36 Okla. Cr. 21, 251 Pac. 507; Bond v. State, 53 Okla. Cr. 224, 11 Pac. (2d) 200; Coats v. State, 56 Okla. Cr. 26, 32 Pac. (2d) 955.

The jury being the exclusive judge of the weight of the evidence, and where there is a clear conflict in the evidence, or it is such that different inferences can properly be drawn from it, this determination will not be interfered with unless it is clearly against the weight of the

evidence, or appears to have been influenced by passion or prejudice. Cole v. State, 18 Okla. Cr. 430, 195 Pac. 901; Richards v. State, 22 Okla. Cr. 329, 211 Pac. 515; Clemmer v. State, 56 Okla. Cr. 354, 40 Pac. (2d) 37.

The jury in analyzing the testimony reached the conclusion that the defendant participated in the attempted robbery of the bank, notwithstanding the defendant's positive testimony that he did not, and returned a verdict of life imprisonment in the state penitentiary, in the face of the record that three other parties entered their pleas of guilty in taking part in the attempted robbery, and had been sentenced to serve a term of 20 years in the penitentiary.

There is nothing in the record to show that this defendant had prior to this time been charged or convicted of a robbery, or attempted robbery, and there is no evidence in the record showing this defendant to be a worse criminal than the others who had pleaded guilty and been sentenced to 20 years.

This court must conclude from the finding of the jury that the jury imposed a life sentence on the defendant for the reason that he declined to plead guilty, insisting on his innocence, and forcing the state to go to trial and convict him. The facts in the record do not justify a life sentence, and in view of the fact that the other parties participating in the attempted robbery with the defendant were sentenced to serve a term of 20 years in the state penitentiary, this court is inclined to believe, and does believe, that the sentence is excessive, and should be modified from a life sentence to a sentence in the penitentiary for a term of 20 years, and, as modified, the judgment is affirmed.

DOYLE and BAREFOOT, JJ., concur.