**Carter John HICKERSON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–69.**

Court of Criminal Appeals of Oklahoma.

May 31, 1977.

James O. Goodwin, Tulsa, David Cole, Legal Intern, for appellant.

Larry Derryberry, Atty. Gen., Michael P. Kane, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Carter John Hickerson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–75–230, for the offense of Robbery with Firearms in violation of 21 O.S.1971, § 801. His punishment was fixed at ten (10) years' imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, John Michael Allen testified that on January 29, 1975, he was employed at the Exodus Men's Wear Store in Tulsa; that at approximately 10:00 a. m. three black males entered the store. They shopped for about five minutes when one of them stated that he wanted to try on a pair of shoes. As Allen reached down to get a shoe horn, he was struck on the back of the head. He immediately turned around and observed the defendant holding a small brown gun. The defendant ordered him to "get away from that button." Allen was taken to the back room and tied up with a necktie by the defendant and one of his companions. He remained in the back room for five minutes during which time he heard the cash drawer open and hangers being rattled. Upon returning to the front of the store he discovered that $200.00 was missing from the cash register and all the leather coats had been removed from the hangers. He testified that the next time he observed the defendant was in a lineup at the county jail.

On cross-examination he testified that he did not recall whether or not he included a tatoo in his description to the investigating officer.

Janyce Levine testified that she went to the Exodus Shop on the morning of January 29, 1975. Two black males greeted her and asked if they could help her. She inquired about John Allen. They stated that he had gone around the corner for some change. She became apprehensive and left the store. She subsequently observed men putting clothing into a car that was backed up to the store.

For the defense, Officer Jerald Anquoe testified that he went to the Exodus Men's Store on the morning of January 29, 1975, in response to an armed robbery call. He obtained descriptions of three negro males from John Allen. Allen did not mention a tatoo in describing the shorter of the three subjects.

The defendant testified that he had the tatoo on his face since he was thirteen years old. He denied robbing the Exodus Store.

Ida Ruth Evans and June Oldon, defendant's aunts, testified that the defendant had the tatoo on his face for many years.

Defendant asserts, as his first assignment of error, that the trial court committed reversible error when it permitted the prosecutor to bolster its witness' identification by allowing evidence of a pre-trial identification. Defendant cites as authority *Cothrum v. State*, Okl.Cr., 379 P.2d 860 (1963); however, *Cothrum* was expressly overruled in *Hill v. State*, Okl.Cr., 500 P.2d 1075 (1972), wherein Judge Simms stated, at page 1078:

"Initially, we feel most strongly that testimony of a victim concerning a pretrial identification is not only material, but most competent for corroboration. It has been recognized that prior identification of an accused is more reliable than a later

courtroom identification for the reason that it is closer to the crime in point of time, thus affording less opportunity for fading or deterioration of the victim's memory or changes in the accused's appearance.

"Further, it cannot be said that the defendant would be precluded from showing, or proving, that the victim was unable to identify the defendant as the perpetrator at some previous trial confrontation, therefore, the state should have the same opportunity. The sword, if you will, of prior extra-judicial identification must cut both ways.

"This is not to say the entire gamut of extra-judicial identification activity is open and available to the prosecution. In our view, competent original testimony of the identifier, AFTER, and only after, the in-court identification has been made in such fashion as to satisfy the requirements of Wade [United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)] and Thompson v. State, Okl. Cr., 438 P.2d 287, would include testimony to the effect that the identifier at a particular day, place, and time or times, had occasion to see, recognize and identify the defendant as the person who committed the crime."

We would further observe that we have carefully examined the evidence adduced at the in camera hearing prior to trial and are of the opinion that the in-court identification of the witness Allen, sufficiently satisfied the requirements of Thompson v. State, Okl.Cr., 438 P.2d 287. We would further observe that Allen's testimony as to a pretrial identification came after his in-court identification rather than prior thereto as contended by the defendant. We, therefore, find this assignment of error to be without merit.

The next assignment of error raised by the defendant asserts that the court erred when it "allowed the State's expert witness to state an opinion which invaded the province of the jury." We would first observe that the complained of evidence was adduced not from "the State's expert witness," but rather was elicited during the cross-examination of the defense witness, Officer Anquoe. Officer Anquoe was called by the defendant for the purpose of establishing that John Allen did not include a tatoo in his original description of the defendant. On cross-examination, the prosecuting attorney inquired of the officer as follows:

"Q. Jerry, in your experience in taking all these reports that you have taken in your seven years on the Department, is it your experience that when people go through something like an armed robbery, they will remember every detail of a description?

"MR. BURNS: I'm going to object to that as calling for a conclusion. It's irrelevant to what we are talking about here.

"MR. MUSSEMANN: It's very relevant.

"THE COURT: I think he can answer that. I'll overrule the objection.

"THE WITNESS: Restate the question.

"MR. MUSSEMANN: Sir, your experiences in all the reports you've taken, all the armed robberies, burglaries, incidents that you have done to where descriptions of someone were given, is it your experience that everybody remembers every detail about the suspect?

"A. Not every detail.

"Q. Is it often that they can leave out a scar or a tattoo or some characteristic?

"A. Yes, sir, they can." [Tr. 76–77]

We have consistently held that the extent of cross-examination rests in the sound discretion of the trial court and it is only in cases of clear abuse of such discretion, resulting in a manifest prejudice to the accused that this Court will reverse a case. See Delaney v. State, Okl.Cr., 507 P.2d 564 (1973). It is readily apparent that the trial court did not abuse its discretion in allowing the cross-examination of the witness, an experienced police officer, as to his experiences in taking reports in other offenses.

The final two assignments of error generally contend that the trial court erred in denying defendant access to the police

report compiled upon the initial investigation of the robbery. The record reflects that prior to trial the following transpired:

"MR. BURNS: At this time we would like to make a brief record on our motion to produce the exculpatory evidence which we talked about in camera. We feel like we have a right to these since it is in the nature of exculpatory negative evidence which tends to show the innocence of the Defendant in this case. The only way we would have access to this information is to have a copy of the written report, itself, since the preliminary hearing transcript shows that the State's witness, who we are going to know about here would fail to know whether or not he had reported characteristics in the identification of the person—the perpetrator of the crime.

"MR. MUSSEMANN: To which, Your Honor, we would object. It's ruled time and time again that, that report is work product. I've been over the report—in fact, told them what the report contains. If they wish to call the officer to the stand to elicit that same testimony, they are free to do so. We object to furnishing the report to them. His view of the characteristics of the report differ from my view.

"THE COURT: It's a work product. You are not entitled to it. Mr. Wood, I understood from Mr. Mussemann that he told you what was contained in that, and that you asked him about that report. So, I'll overrule it." [Tr. 3–4]

The rule concerning discovery of "work product" was originally discussed by this Court in *State ex rel. Fallis v. Truesdell*, Okl.Cr., 493 P.2d 1134 (1972), wherein we stated in the second and third paragraphs of the Syllabus:

"An accused is not entitled to discovery and inspection of unsworn statements of a prosecution witness in the possession of the State, of the transcript of the statement of a prosecution witness taken by a prosecutor or peace officer during an investigation or preparatory to trial, or of the 'work product' of the State consisting of unsworn statements signed by others than the accused."

"The State's 'work product' shall include reports compiled by a law enforcement agency in the course of its investigation into a criminal offense and statements obtained by prosecuting attorneys and peace officers from various witnesses for the State, without regard to whether such statements or reports are later sought for the purpose of cross-examination or impeachment."

■ This rule was modified by this Court in *McDonald v. State*, Okl.Cr., 553 P.2d 171 (1976), wherein we stated:

"Also relevant to the issue of criminal discovery is 22 O.S.1971, § 749, which does not permit discovery of statements alone unless they are sworn statements and *State ex rel. Fallis v. Truesdell*, Okl. Cr., 493 P.2d 1134 (1972), declared that an accused is not entitled to discovery and inspection of unsworn statements of a State's witness in the possession of the State. However, such principles cannot be applied in a manner which infringe upon the constitutional mandate of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). . . . " [Footnote omitted]

We thus must determine whether or not the denial of defendant's access to the police report infringed upon the constitutional mandate set forth in *Brady*, wherein the United States Supreme Court held that:

" . . . [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

We have carefully examined the entire record in the instant case and are of the opinion that the denial of access to the defendant of the actual police report was not in itself a "suppression of evidence" as enunciated in *Brady*. The record further reflects that defense attorney was, in fact, aware of the contents of the report by his thorough cross-examination of the witness

Allen as to the description he furnished the police of the suspect.

Officer Anquoe was called as a defense witness and testified on direct examination as follows:

"Q. Did he give you a physical description?

"A. Yes, sir.

"Q. What was that?

"A. He described one particular subject as being short, about five nine. A negro male, round faced. The clothing description I cannot recall, but this was the man in question, here.

"Q. Would it help you to refresh your memory from your notes?

"A. Yes, sir.

"MR. WOOD: Any objection?

"MR. MUSSEMANN: You want him to have his report? Sure. Is this your report, Jerry?

"THE WITNESS: Yes, sir.

"MR. MUSSEMANN: Okay.

"THE WITNESS: He described this man at the store as being a negro male, twenty years old, six foot two. As I stated this was the man at the door. The shorter man in question was acting as though he was making a purchase was described as a negro male, black hair, brown eyes, about five feet nine. About a hundred and thirty five pounds and twenty years old. The second subject was a—

"Q. (By Mr. Wood) On the shorter man, was there a clothing description given also?

"A. Yes, sir, on the shorter man, he wore a brown hat, brown trousers and a gray sweater.

"Q. Is there more on the physical description, there, officer?

"A. No, sir, not on this particular subject.

"Q. Anything distinguishable—any facial characteristics?

"A. No, sir, he didn't give me any.

"Q. Any tattoos?

"A. No, sir, he didn't say.

"MR. WOOD: Thank you, officer. That's all I have." [Tr. 72, 73]

We thus determine that defendant was not prejudiced by the denial of access to the actual police report. The information contained in the report that the witness did not mention to the investigating officer that the suspect had a tatoo on his face was properly presented to the jury by direct testimony of the officer.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly AFFIRMED.

BLISS and BRETT, JJ., concur.