Lloyd Mancil **NICKELL**, Sr., Appellant,

v.

**STATE of Oklahoma, Appellee.**

No. F-91-581.

Court of Criminal Appeals of Oklahoma.

Nov. 10, 1994.

**672**

Tim Wilson, Asst. Public Defender, Oklahoma City, for appellant at trial.

Don Deason, Asst. Dist. Atty., Oklahoma City, for the State at trial.

Carolyn L. Merritt, Asst. Public Defender, Oklahoma City, for appellant on appeal.

Susan Brimer Loving, Atty. Gen. of Oklahoma, G. Lynn Burch, III, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

## OPINION

STRUBHAR, Judge:

Appellant, Lloyd Mancil Nickell, Sr., was tried by jury in the District Court of Oklahoma County, Case No. CF–90–764 for the crimes of Kidnapping for the Purposes of Extortion (21 O.S.1981, § 745), Conspiracy to Commit Robbery with a Firearm (21 O.S.1981, § 421), Assault and Battery with a Dangerous Weapon (21 O.S.1981, § 645), Burglary in the First Degree (21 O.S.1981, § 1431) and Possession of a Firearm while in the commission of a Felony (21 O.S.1981, § 1287). Appellant was charged jointly with co-defendants, Glenn Wayne Cunniff, Silas Camacho and David Neal Waller [1]. During trial, the trial court declared a mistrial as to defendant Camacho and severed her case after allegations that Appellant and co-defendant Cunniff threatened her in order to control her testimony. The jury found Appellant guilty of Kidnapping for the Purposes of Extortion, After Former Conviction of Two or More Felonies, Conspiracy to Commit Robbery with a Firearm, After Former Conviction of Two or More Felonies and was unable to reach verdicts on the remaining charges. The jury recommended twenty (20) years imprisonment for each count. The trial court sentenced Appellant accordingly and ordered the sentences to run consecutively. From this Judgment and Sentence, Appellant perfected his appeal to this Court.

Silas Camacho, Appellant's girlfriend, was a drug courier for an Oklahoma City Hispanic gang led by Carlos Rodriguez known as the "Juarritos". Rodriguez supplied Camacho with drugs and in July 1989 Camacho overdosed on cocaine and marihuana. Following the overdose, Appellant contacted Glenn Cunniff, who introduced him to David Waller, to seek revenge against Carlos Rodriguez. Appellant, Waller, Cunniff and Camacho began to watch Carlos Rodriguez and to follow Rodriguez and other alleged members of the drug ring. Waller claimed they intended to rob Rodriguez and take any drugs and money they could find.

On Friday evening, January 26, 1990, Waller and Appellant went to Rodriguez' house and falsely claimed they were the police. After Rodriguez opened the door, Waller and Appellant entered the house and kidnapped

---

1. Prior to trial, Waller pled guilty to Conspiracy to Commit Kidnapping. In exchange for his testimony against Appellant, Cunniff and Camacho, the State dismissed the remaining charges and recommended Waller receive a ten (10) year prison term with five (5) years suspended. The trial court ordered this sentence to run concurrently with any prison term Waller received as a result of pending criminal charges in Grady County.

him. While en route to Appellant's house, one of the men used a stun gun to shock Rodriguez and insisted he tell them where more money and drugs could be found. Rodriguez was then taken to Appellant's house near Harrah and placed in a closet.

Upon finding her husband gone, Mrs. Rodriguez immediately notified the police. The police placed a tap on the Rodriguez phone line. Waller and an unidentified person made calls to Rodriguez' wife demanding money and arranging "drops" to exchange the money for Rodriguez. Rodriguez' wife made two attempts to deliver the money, but neither were successful. The police were able to trace the telephone calls made by Waller and to link Camacho, Cunniff and Appellant to the scheme.

Rodriguez was kept locked in the closet at Appellant's house. After Rodriguez had been in the closet for a few days, Appellant asked his neighbor if he could put something in the trunk of an abandoned car on his neighbor's land. Appellant moved Rodriguez to the trunk of the abandoned car and left him there for approximately one and a half days. Rodriguez was then removed from the trunk and taken back to Oklahoma City. Police found Rodriguez after they arrested Camacho on February 1, 1990.

In his first assignment of error, Appellant contends the State improperly vouched for and bolstered the credibility of David Neal Waller. Waller testified he entered into a "Memorandum of Understanding" with the State of Oklahoma which outlined the terms and conditions of his plea agreement. Appellant objects to those portions of Waller's testimony in which he read the agreement's requirement to tell the truth (hereinafter truthfulness provisions) and explained that failure to testify truthfully renders his agreement null and void.[2]

### A.

■ It is error for the State to personally vouch for the credibility of its witnesses. *Camron v. State*, 829 P.2d 47, 57 (Okl.Cr. 1992). In *Freeman v. State*, 876 P.2d 283 (Okl.Cr.1994), this Court adopted the test enunciated in *United States v. Bowie*, 892 F.2d 1494 (10th Cir.1990), to determine if the state improperly vouched for the credibility of one of its witnesses. "Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *Id.* at 1498.

■ Although *Freeman* did not address whether truthfulness provisions constitute impermissible vouching, the *Bowie* court did so and we again find its analysis correct. The *Bowie* court held, "[u]se of the 'truthfulness' portions of these [plea] agreements becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony." *Id.* at 1498. There is no improper vouching if the testimony does "no more than reveal that the witnesses had an obligation to testify truthfully and explain the consequences of a breach of that obligation." *Id.* at 1499.

The Fifth Circuit addressed this issue in *United States v. Leslie*, 759 F.2d 366, 378 (5th Cir.1985), and found "[a] witness's promise in a plea agreement ... to testify truthfully at any judicial proceeding in which he or she may be called as a witness is the same promise he or she makes when called as a witness at trial." The witness's promise to testify truthfully demonstrates the "witness's understanding of the penalty for breaching that promise-perjury charges." *Id.* Neither mere revelation of the obligation to testify

---

2. The Memorandum of Understanding read in pertinent part:
   It is hereby agreed ...
   1. Mr. David Neal Waller will cooperate fully with law enforcement and will testify truthfully when called as a witness in any proceeding relating to the kidnapping of Carlos Rodriguez.

6. Any refusal by David Neal Waller to cooperate fully with law enforcement officials in this matter shall be grounds for termination of this agreement. In the event that David Neal Waller testifies falsely under oath, this agreement shall be null and void and Mr. Waller will be prosecuted for perjury.

truthfully nor recognition of the consequences of testifying falsely do anything more than reiterate the obligations all witnesses face when they take the oath at the beginning of their testimony. Truthfulness provisions merely counter-balance the impeaching effect a plea agreement has on the minds of the jury. They do not remove the jury's duty to weigh the credibility of the witness.

■ In the instant case, there was no improper vouching. Waller's testimony and the admission of the "Memorandum of Understanding" did nothing more than reveal that he had an obligation to testify truthfully and explain the consequences of a breach of that obligation. Nothing in the plea agreement nor in the record indicates the prosecutor explicitly or implicitly indicated he had means to verify that Waller was telling the truth.

### B.

■ Appellant also claims it was error to allow Waller's testimony and to admit the "Memorandum of Understanding" concerning his promise to testify truthfully during his direct examination. He claims such action impermissibly bolstered Waller's credibility in violation of 12 O.S.1991 § 2608(A)(2).[3] This Court must determine whether truthfulness provisions contained in plea agreements are admissible or constitute improper bolstering prior to the witness' credibility being challenged.

Because this Court has yet to rule on this precise issue, we turn to the federal circuits for guidance. The federal circuits are divided on the admissibility of truthfulness provisions in plea agreements. The majority of circuits allow admission of the truthfulness provisions of a plea agreement prior to the witness' credibility being attacked. *See, United States v. Drews,* 877 F.2d 10, 12 (8th

Cir.1989); *United States v. Edelman,* 873 F.2d 791, 795 (5th Cir.1989); *United States v. Mealy,* 851 F.2d 890, 898–900 (7th Cir.1988); *United States v. Townsend,* 796 F.2d 158, 162–63 (6th Cir.1986); *United States v. Oxman,* 740 F.2d 1298, 1302–03 (3d Cir.1984), *vacated and remanded on other grounds sub nom. United States v. Pflaumer,* 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985); *United States v. McNeill,* 728 F.2d 5, 14 (1st Cir.1984); *United States v. Henderson,* 717 F.2d 135, 137–38 (4th Cir.1983). The minority of circuits hold it is error to introduce truthfulness provisions until the witness' credibility has been challenged. *See, United States v. Cosentino,* 844 F.2d 30, 32–35 (2d Cir.1988), *cert. denied,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988); *United States v. Cruz,* 805 F.2d 1464, 1479–80 (11th Cir.1986), *cert. denied,* 482 U.S. 930, 107 S.Ct. 3215, 96 L.Ed.2d 702 (1987); *United States v. Lew,* 875 F.2d 219, 223 (9th Cir. 1989).

In *United States v. Lord,* 907 F.2d 1028, 1030 (10th Cir.1990), the Tenth Circuit addressed whether Fed.R.Evid. 608(a)(2)[4] allows the admission of truthfulness provisions prior to the witness' credibility being challenged. Adopting the majority view, the *Lord* court noted, "evidence concerning a plea agreement and its provisions may have both a bolstering and an impeaching effect on the witness's credibility." *Id.* Although the plea agreement contains truthfulness provisions that may bolster a witness' credibility, the agreement also contains evidence that the witness committed a crime and is testifying for the personal benefit of receiving a lighter sentence. The benefit received by the witness in a plea agreement gives the jury reason to believe the witness may not be telling the truth. Because of this impeaching effect, it is important the prosecutor be allowed to emphasize the witness had an obligation to tell the truth. Thus, "introduction

---

3. Title 12 O.S.1981, § 2608(A) states:

    A. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, subject to these limitations:

    1. The evidence may refer only to character for truthfulness or untruthfulness; and

    2. Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked.

4. Fed.R.Evid. 608(a)(2) is identical to 12 O.S. 1981, § 2608(A)(2), but adds evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked *by opinion or reputation evidence or otherwise.*

of this evidence [during direct examination] enables the jury to more accurately assess the witness's credibility (citations omitted), regardless of whether the defense intends to use the agreement to impeach the witness's testimony." *Id.*

The *Lord* court further noted the Second Circuit has "acknowledged difficulties created by its [minority] procedure for admitting evidence concerning the provisions of an agreement." *Id.* at 1030. The Second Circuit allows admission of the plea agreement provisions that impeach a witness' credibility prior to a challenge of the witness' credibility, but excludes the truthfulness provisions which bolster the witness' credibility until it has been attacked. *Id.* The Second Circuit's difficulty has been in "drawing fine distinctions between which provisions of an agreement are bolstering and which are impeaching." *Id.* at 1031. The Second Circuit acknowledged its view was problematic stating, "[w]ere we writing on a blank slate, we might have followed the other circuits that avoid the distinctions that we have required judges and lawyers to make during the heat of trial." *Id.* at 1030.

We find the majority view better comports with the purposes behind 12 O.S.1991, § 2608(A)(2) to allow jurors to better assess the credibility of the witness. Therefore, we will allow the admission of truthfulness provisions in plea agreements prior to the witness' credibility being challenged. Consequently we find the admission of the truthfulness provisions in Waller's plea agreement did not constitute impermissible bolstering. Accordingly, we find the trial court did not err in admitting Waller's entire plea agreement prior to his credibility being challenged.

In his second proposition of error Appellant contends the trial court erred in failing to sever his case from codefendants, Cunniff and Camacho. Appellant also argues the trial court erred in compelling him to share peremptory challenges with his co-defendants. 22 O.S.1981 § 655.

■ First, Appellant claims because both he and Cunniff admitted participating in the Rodriguez surveillance plan and operation, but denied kidnapping Rodriguez with Waller, their defenses were inconsistent and

antagonistic. In *Neill v. State,* 827 P.2d 884, 890 (Okl.Cr.1992), this Court held severance is appropriate if co-defendants' defenses are mutually antagonistic. Defenses are antagonistic when each defendant attempts to exculpate himself and inculpate his co-defendant. *Id.* at 887. However, "[a]bsent an abuse of discretion resulting in prejudice to the appellant, the decision of the trial court will not be disturbed on appeal." *Id.* at 886.

To warrant severance a defendant must show the defenses conflict to the point of being irreconcilable and mutually exclusive. *Id.* at 890. A defendant "cannot rely on mere apprehensions of prejudice, but must state how the defendants would in fact be prejudiced by joint trial." *Id.*

Appellant's and Cunniff's defenses were not antagonistic. Neither Appellant nor Cunniff testified or introduced evidence that inculpated one another in the kidnapping of Rodriguez. Appellant stated he was at Silas Camacho's house, while Cunniff testified he was at the So Fine Club on the night Rodriguez was kidnapped. Neither Appellant nor Cunniff argued or introduced evidence that the other was with Waller, each simply argued he was not the other person with Waller when he kidnapped Rodriguez. As this Court noted in *Neill,* defenses become antagonistic when "each Appellant [is] placed in the position of having to defend against two accusers, the State and his co-defendant." *Id.* at 888–89. In the instant case, the defenses of Appellant and Cunniff did not place either in the position of having to defend against "two accusers."

■ Second, it was not error to compel Appellant and his co-defendants to share peremptory challenges. Title 22 O.S.1981 §§ 655 and 622 require defendants to share their peremptory challenges when they are jointly tried. Section 622 provides that "when several defendants are tried together they cannot sever their challenges, but must join therein." Section 655 specifically provides an exception to the rule in § 622 when the defenses are inconsistent. Section 655 states in pertinent part that co-defendants tried jointly shall join in their challenges "provided, that when two or more defendants

have *inconsistent* defenses they shall be granted separate challenges for each defendant as hereinafter set forth."

In the instant case, Appellant and his co-defendant did not have inconsistent defenses. As stated above, while Appellant and Cunniff attempted to exculpate himself, neither attempted to inculpate the other. There is nothing inconsistent about their defenses. Accordingly, we find Appellant was not entitled to separate peremptory challenges and therefore this proposition of error is without merit.

█ Lastly, Appellant contends that prospective juror Kelly should have been dismissed for cause pursuant to 38 O.S.1981 § 28 [5] and 22 O.S.1981 § 659 [6]. Appellant argues that prospective juror Kelly, while not automatically disqualified by 38 O.S.1981 § 28(B), had an implied bias because he was a retired FBI agent and associated with District Attorney Bob Macy's personal bodyguard.

First, we note that Appellant failed to provide a complete record as mandated by Rule 3.2 of the *Rules of the Oklahoma Court of Criminal Appeals*, 22 O.S.Supp.1989, Ch. 18, App. Rule 3.2 requires an appellant to file a certified copy of the original record. Appellant failed to provide a transcript of the voir dire examination for review.

In *King v. State* 562 P.2d 902, 905 (Okl.Cr. 1977), this Court held that "[u]nless the voir dire examination is transcribed by the court reporter and contained in the record there is nothing for this Court to review concerning the alleged error." In *King*, an appellant argued the trial court erred in not excusing prospective jurors for expressed and implied bias. This Court noted, "the record as presented does not contain the voir dire examination and is completely void of any testimony which might support the contention." *Id.* Thus, this Court refused to rule on the appellant's alleged error. *Id.*

In the instant case, Appellant failed to provide the transcript of the voir dire examination. The trial judge attempted to make a record by stating the facts surrounding prospective juror Kelly's voir dire examination noting that Kelly was a retired FBI agent and knew District Attorney Macy's personal bodyguard. Further, the trial judge stated he interviewed Kelly and believed Kelly could be an impartial juror, who did not have any preconceived notions. As noted above, the record does not include a transcript of that interview, only the judge's recollection.

In *Bass v. State*, 733 P.2d 1340, 1341 (Okl. Cr.1987), this Court held, "the qualification of a juror is a question to be addressed by the trial court in the exercise of its sound discretion." In *Bass*, the appellant challenged a juror who knew one of the witnesses. After reviewing the testimony of the juror, who stated he could view the case impartially and be unbiased, this Court held, "we cannot say the trial court abused its discretion in refusing to excuse the juror for cause." *Id.* at 1341.

In *Coats v. State*, 56 Okla.Crim. 26, 32 P.2d 955 (1934), the appellant challenged two jurors for cause because they had once been deputy sheriffs. The *Coats* court held, "[t]he fact that a man called for jury service has at one time prior to the time he is called for jury services held some kind of a deputy sheriff commission does not disqualify him to serve on the jury." *Id.* at 958.

Based on *Bass* and *Coats*, we find no error. The fact that Kelly knew District Attorney Macy's personal bodyguard and was a retired FBI agent, does not, *ipso facto*, establish an implied bias. Without the transcript, the record is insufficient to show the trial court abused its discretion when it refused to excuse prospective juror Kelly for cause.

Accordingly, the judgment and sentence is **AFFIRMED.**

---

5. 38 O.S.1981 § 28(B) lists those persons who are not qualified to serve as jurors because of their profession, which includes federal law enforcement officers.

6. 22 O.S.1981 § 659(1) states:

Particular causes of challenge are of two kinds:
1. · For such a bias as when the existence of the facts is ascertained, in judgement of law disqualifies the juror, and which is known in this chapter as implied bias.

LUMPKIN, P.J., specially concurs.

JOHNSON, V.P.J., and LANE and CHAPEL, JJ., concur.

LUMPKIN, Presiding Judge, specially concurring.

I join in the Court's decision in this case and provide the following observations on the words of art "vouching" and "bolstering" which are not defined within our statutes.

As practitioners in the law, we have been somewhat spoiled since the 1978 adoption of the Oklahoma Evidence Code, 12 O.S.1991, § 2101 et seq. The codification of the rules of evidence relieved us of the case by case analysis of the evaluation of each particular evidentiary issue and provided an encapsulated compendium of the law governing evidence. However, our conditioning to attempt to fit every evidentiary question into an answer provided by the Code often obviates our consideration of whether the Code applies in the first instance. As Professor Leo H. Whinery has noted,

> the *Code* does not purport to deal with the entire body of law governing the impeachment and rehabilitation of witnesses. Only a few aspects of the evidentiary law governing impeachment and rehabilitation are covered in the *Code*. As observed by the 9th Circuit Court of Appeals in *United States v. Alvarez–Lopez*, '[t]he Evidence Code does not attempt to write a catalog of all the rules which govern evidence that can be used to impeach a witness. Rather, the code only attempts to lay down a few specific rules dealing with the situations in which impeachment upon collateral matters may be particularly subject to potential abuse, and, in those situations, to give substantial discretion to the trial court in admitting or excluding the impeaching evidence.

3 L. Whinery, *Oklahoma Evidence*, § 47.01, p. 370 (1994) (citing *United States v. Alvarez–Lopez*, 559 F.2d 1155 (9th Cir.1977).

This observation can also be made as we seek to apply the concepts contained within the terms "vouching" and "bolstering". At common law, the concept of "vouching" was inherent when a party called a witness to testify, i.e. if the party did not think the witness was truthful, the witness would not have been called to the witness stand. This led to the ancient common-law rule that one could not impeach his own witness. See *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *James v. Illinois*, 493 U.S. 307, 315 n. 5, 110 S.Ct. 648, 654 n. 5, 107 L.Ed.2d 676 (1990). However, the provisions of the Evidence Code have stripped away this concept of the party "vouching" for the testimony of each witness called and allows for the impeachment of a witness, even by the party calling the witness. See 12 O.S.1991, § 2607. The current scope of the term "vouching" is basically restricted to the concept of an attorney personally assuring the truthful nature of the testimony of a witness to the trier of fact. See *Lawn v. United States*, 355 U.S. 339, 359 n. 15, 78 S.Ct. 311, 323 n. 15, 2 L.Ed.2d 321 (1958); *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985).

While the term "bolstering" is not specifically defined in the Evidence Code, its concept is addressed within the provisions of 12 O.S.1991, § 2608, as it relates to reputation or opinion evidence of character of a witness for truthfulness or untruthfulness. However, under the facts of this case, the Court is not presented with opinion evidence relating to a witness, but the very basis of the witnesses' testimony. At common law, the concept of "bolstering" was addressed within the term "rehabilitation". The reason was this type of evidence for truthfulness was generally excluded until the witnesses' credibility was attacked. See *Jackson v. State*, 12 Okl.Cr. 406, 157 P. 945 (1916) (error to admit prior consistent statement before witness impeached). See also 4 J. Wigmore, *Evidence*, § 1104, pp. 233–34 (J. Chadbourn ed. 1972); 3 L. Whinery, *Oklahoma Evidence*, § 47.31, pg. 377 (1994); *United States v. Sherman*, 171 F.2d 619, 622 (2d Cir.1948) (Judge Learned Hand reasoned: "[t]he reason for . . . exclusion [of an earlier consistent account] is because it has not been made on oath rather than because it has no probative value, although courts have often spoken as though it had none.") Therefore, "bolstering" constitutes nothing more than "preemptive rehabilitation" of a witness. In other

words, it is the timing of the evidence based on the anticipated attempt to impeach a witness which is at issue and, to a degree, it is addressed in Section 2608. However, our jurisprudence has vacillated on whether the predicates ultimately codified in the Evidence Code must be followed, especially as it relates to non-opinion evidence.[1]

I submit the issues involved in the admission of a cooperative agreement do not require the "vouching" v. "bolstering" analysis. The testimony of the witness regarding his cooperation agreement does not constitute "bolstering" any more than a witness taking the oath prior to testifying or an expert witness providing his or her qualifications to testify prior to rendering an opinion as an expert.

---

1. *See Scales v. State*, 737 P.2d 950, 952 (Okl.Cr. 1987) (Court held a witness, after making an in-court identification of the defendant, may testify as to extra-judicial identification because "testimony of a victim concerning a pre-trial identification is not only material, but most competent for corroboration." *Id.* (citing *Hill v. State*, 500 P.2d 1075 (Okl.Cr.1972)). Such pre-trial identification evidence may also be admitted "not only to corroborate an identification made at trial, but as independent evidence of identity." *Id.* (citing *Young v. State*, 531 P.2d 1403, 1406 (Okl.Cr. 1975)), if it is first demonstrated that the identifier can no longer make an in-court identification (citing *Elvaker v. State*, 707 P.2d 1205, 1206 (Okl.Cr.1985)). *See Also Trim v. State*, 808 P.2d 697, 699 (Okl.Cr.1991) (same); *Maple v. State*, 662 P.2d 315, 316 (Okl.Cr.1983) (reversed because officer allowed to testify as to extrajudicial identification by victim); *Brownfield v. State*, 668 P.2d 1165, (Okl.Cr.1983) (same); *Hickerson v. State*, 565 P.2d 684, 685–86 (Okl.Cr.1977) (noting cases not permitting extrajudicial identifica-tion evidence had been overruled). The old cases were based on the proposition it was improper to bolster testimony because it was self-serving, immaterial or simply hearsay (*Cothrum v. State*, 379 P.2d 860, 865 (Okl.Cr.1963), *Gillespie v. State*, 355 P.2d 451, 453–54 (Okl.Cr.1960); *Noyes v. State*, 516 P.2d 1368, 1370–71 (Okl.Cr. 1973) ("It is not competent to introduce testimony as to what a witness may have sworn or stated on some previous occasion, simply to confirm or bolster up the testimony of said witness as delivered before the jury, in the absence of some attack on the testimony of said witness, as by showing that the witness had sworn differently or stated differently to the testimony delivered on the trial of the case, or in the absence of some effort made to impeach the witness." (citing *Doser v. State*, 88 Okl.Cr. 299, 337, 203 P.2d 451, (1949) (Syllabus 17)). The Court's decision in the present case is consistent with the recent line of cases allowing extrajudicial identification by a witness to be admitted as a part of the case in chief.