2001 OK CR 3

**Darrin Lynn PICKENS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F98–693.**

Court of Criminal Appeals of Oklahoma.

Jan. 24, 2001.

Joe Robertson, Robert Stubblefield, Capital Trial Division, Indigent Defense System, Norman, OK, Attorneys For Defendant at trial.

Don I. Nelson, Assistant District Attorney, Creek County Courthouse, Sapulpa, OK, Attorney for the State at trial.

William H. Luker, Capital Direct Appeals, Indigent Defense System, Norman, OK, Attorney for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee on appeal.

## OPINION

JOHNSON, Judge:

¶ 1 Darrin Lynn Pickens was tried by jury in Creek County District Court, Case No. CF 90–66, before the Honorable Donald Thompson, District Judge, and convicted of Murder in the First Degree while in the commission of Robbery with a Dangerous Weapon, in violation of 21 O.S.Supp.1989, § 701.7 (Count 1) and Feloniously Carrying a Firearm, in violation of 21 O.S.Supp.1989, § 1283 (Count 2). The jury found the existence of three aggravating circumstances and set punishment at death on the murder conviction and at ten years imprisonment on Count 2.[1] The trial court sentenced accordingly. From the Judgment and Sentences imposed, Appellant perfected this appeal.[2] Appellant raises fifteen propositions of error.[3]

---

1. The jury found the following aggravating circumstances: (1) that Pickens had previously been convicted of a felony involving the use or threat of violence against the person; (2) that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution; and (3) that there existed the probability that Pickens would commit criminal acts of violence that would constitute a continuing threat to society.

2. Appellant's original convictions for First Degree Murder, Feloniously Carrying a Firearm, and Robbery with Firearms were reversed and remanded for new trial in *Pickens v. State*, 1994 OK CR 74, 885 P.2d 678, *overruled in part on other grounds*, 1996 OK CR 19, 917 P.2d 980 (hereinafter referred to as *Pickens* II). Our reversal was based upon the denial of Pickens'

constitutional right to counsel under the Sixth Amendment and upon the trial court's failure to instruct on lesser included offenses of second degree murder and first degree manslaughter. We also criticized the language of the original Information filed in this matter which contained confusing language alleging felony murder but also alleging the murder was committed with a premeditated design.

3. Appellant's Petition in Error was filed in this Court on November 16, 1998. Appellant's Brief was filed on October 13, 1999. The State's brief was filed on February 10, 2000. Appellant filed a Reply Brief on March 1, 2000. The case was submitted to the Court on March 17, 2000, and oral argument was held June 27, 2000. Appellant filed Post Oral Argument Supplemental Authorities on July 7, 2000.

¶ 2 In the early morning of February 4, 1990, Pickens robbed the Mr. Quick 21 convenience store in Sapulpa. He shot the store clerk, Tommy Lee Hayes, four times. A customer found Hayes' body between 2:00 and 3:00 a.m. Hayes died from two of the gunshot wounds to the chest and abdomen. Three .38 caliber unjacketed lead bullets were found at the scene, and two more were recovered from Hayes' body. The store manager determined $180.33 was missing, and the last sale shown on the cash register occurred at 2:06 a.m.

¶ 3 Pickens was arrested in Tulsa on February 9, 1990 on unrelated charges.[4] Tulsa police officers found a .38 caliber F.I.E. Titan Tiger Six Shot revolver in his car. At the time of his arrest, Pickens asked officers if he was being arrested for the Creek County crimes. Ballistics tests connected the revolver found in Appellant's car to the Tulsa crimes but did not positively identify it as the weapon used in the Sapulpa robbery/murder. However, on March 9, 1990, Pickens confessed to the crimes when he was interviewed on the Sapulpa charges.

¶ 4 In Proposition I, Pickens claims his confession to the robbery and homicide was improperly admitted into evidence because it was the fruit of an illegal arrest based upon a lack of probable cause for issuance of the arrest warrant. Pickens moved to suppress all evidence obtained as a result of his arrest, alleging the averments in the arrest warrant contained misleading and incorrect information about the ballistics tests which were either intentionally false or involved omissions made in reckless disregard for the truth. The motion was overruled at preliminary hearing. (O.R. 495–496, 504) An evidentiary hearing was held on Pickens' post-arraignment motion to suppress and was overruled prior to trial.[5] (O.R.651)

¶ 5 Where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. *Franks v. Delaware*, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

> In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.; see also Gregg v. State*, 1992 OK CR 82, ¶ 19, 844 P.2d 867, 875.

¶ 6 Deputy Sheriff George Elliott's affidavit for the arrest of Darrin Lynn Pickens details the circumstances of the crime scene and includes the statement that the weapon used in the robbery/shooting was believed to be either a "38 or 357 caliber" weapon. It states information was received from Tulsa County that Pickens was arrested with a .38 caliber weapon following two similar armed robberies in the Tulsa area involving convenience store clerks. According to the affidavit, Tulsa County notified Creek County "because it appeared to be the same kind of weapon and incident that occurred in Creek County." The affidavit states Pickens was previously convicted of robbing a convenience store in the same location; in addition, and

---

4. On February 8, 1990, Pickens robbed a Tulsa Circle K convenience store, killing the clerk by shooting her four times. On February 9, Pickens robbed another Tulsa Circle K and shot the clerk and was arrested while fleeing the scene of that crime. Pickens was convicted and sentenced to death and imprisonment on charges based on the Tulsa murder and robberies, and on appeal this Court affirmed that conviction in *Pickens v. State*, 1993 OK CR 15, 850 P.2d 328, *cert. denied*, 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994), *denial of post-conviction relief affirmed in*

1996 OK CR 6, 910 P.2d 1063 (hereafter referred to as *Pickens* I or Tulsa case). Although the crime in this case preceded the Tulsa crimes, the trial in Tulsa County was held shortly before the first trial of this matter.

5. This second motion to suppress was filed on July 17, 1996; the evidentiary hearing was held November 12, 1996, and the motion was denied on November 13, 1996.

relevant to the issue raised, Deputy Elliott stated in the affidavit that the projectiles recovered from the Creek County shooting scene were sent to Tulsa for comparison with the projectiles recovered from the Tulsa robbery/shootings. He said

it was determined the riflings on the recovered projectiles were the same and some similarities noted from all projectiles fired from the suspect's gun. These are the same results as were determined from the projectiles recovered from both crime scenes and both victims shot in Tulsa which Darrin Pickens confessed to committing.[6]

¶ 7 At the evidentiary hearing on the motion to suppress, Deputy Elliott stated he knew at the time he prepared the affidavit that Appellant had been positively connected to two similar robbery/shootings at convenience stores in Tulsa through a positive ballistics match of the projectiles found at those crime scenes with the gun found in Appellant's car. For that reason, he sent the projectiles recovered from the Mr. Quick 21 store in Sapulpa to Tulsa County for comparison with the projectiles and gun recovered in Tulsa and related to the Tulsa homicide/robberies. Based upon those comparisons, he stated in his affidavit

the riflings on the recovered projectiles were the same and some similarities noted from all projectiles fired from the suspects (sic) gun. These are the same results as were determined (sic) from the projectiles recovered from both crime scenes and both

victims shot in Tulsa which Darrin Pickens confessed to committing.

He knew at the time he prepared the affidavit that the ballistics comparison of the projectiles from one of the Tulsa cases was a positive match to the gun found in Appellant's car. At the evidentiary hearing, he admitted he knew the projectiles recovered from the Sapulpa crime scene would be difficult to exactly match because they were mashed and mangled and were not jacketed bullets and, accordingly, said "similarities" rather than "exact weapon" and "exact bullet."

■ ¶ 8 We have reviewed Elliott's testimony and the affidavit and find Appellant has not established by a preponderance of the evidence that Elliott's statements were made in reckless disregard of the truth or with an intent to mislead. In the affidavit, Elliott did not say the similarities were that the projectiles all had six lands, six grooves and a right hand twist; nor did he say that the results showed an exact match. At most, any ambiguity in Elliott's statements concerning the similarities noted on the projectiles arose from his own unfamiliarity with ballistics testing in general and not from an intent to willfully deceive or out of reckless disregard for the truth.

■ ¶ 9 However, even if this Court were to find Elliott's averments regarding the ballistics test were falsehoods or were made with reckless disregard for the truth, this would not render the arrest warrant void, if probable cause for the warrant was otherwise provided by the affidavit. *Skelly v.*

6.  Pages 2 and 3 of the affidavit stated, in part: On 2-9-90 the Creek county Sheriff Department was notified by SGT. Wayne Allen of Tulsa Police Department that there had been Two (2) Armed Robberies with store clerks being shot. SGT. Allen advised there was a Blue Steel 38 Revoler (sic) recovered when the suspect [page 3] was arrested. The revolver was recovered from the suspects vehicle at the time of his arrest in Tulsa County. SGY.(sic) Allen advised because it appeared to be the same kind of weapon and incident that occurred in Creek County. The suspect was identified as Darrin Lynn Pickens.
This suspect was arrested and later convicted in 1985 for robbing a Zip Trip Store which was located where the Mr. Quick Store is presently located.

On getting this information from Tulsa Police Department the Five (5) projectiles recovered from the homicide scene at the Mr. Quick Store were taken to the Tulsa Police Lab for comparison from the 38 revolver that was recovered from suspects' (sic) vehicle.
Upon the lab completing the ballistics tests it was determined the riflings on the recovered projectiles were the same and some similarities noted from all projectiles fired from the suspects gun. These are the same results as were determined (sic) from the projectiles recovered from both crime scenes and both victims shot in Tulsa which Darrin Pickens confessed to committing.
This incident occurred in Creek County.

*State,* 1994 OK CR 55, ¶ 22, 880 P.2d 401, 406; *see also Franks,* 438 U.S. at 158, 98 S.Ct. at 2677. In addition, if we were to find Elliott omitted material information-the specific statement that the tests revealed similarities but were not an exact match-we would still determine whether probable cause existed for the issuance of the arrest warrant "by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant." *Wolford v. Lasater,* 78 F.3d 484, 489 (10th Cir.1996), *citing Stewart v. Donges,* 915 F.2d 572, 582, n. 13 (10th Cir.1990). In either of these situations, we believe the magistrate was presented with facts sufficient to justify issuance of the warrant for Pickens' arrest.

¶ 10 "The existence of probable cause is a common sense standard requiring facts sufficient to warrant a man of reasonable caution in the belief that an offense has or is being committed." *Mollett v. State,* 1997 OK CR 28, ¶ 14, 939 P.2d 1, 7, *cert. denied,* 522 U.S. 1079, 118 S.Ct. 859, 139 L.Ed.2d 758 (1998), *citing United States v. Wicks,* 995 F.2d 964, 972 (10th Cir.1993). Here, Elliott's averments setting forth the similarities of the offenses committed by Pickens in Tulsa County within a matter of days from the Sapulpa homicide/robbery, the use of the same caliber weapon in those robberies/shootings, and that Pickens robbed a convenience store in the exact same location years earlier were sufficient to establish probable cause for Pickens' arrest. Even if Elliott had stated the results of the ballistics tests did not reveal a positive match to the exclusion of all other .38 caliber weapons, we believe such information would not have vitiated probable cause.

¶ 11 On review, this Court will determine whether the magistrate had a substantial basis for concluding probable cause existed to believe the defendant committed the crime, looking at the totality of the circumstances contained in the affidavit supporting the warrant. *Hooper v. State,* 1997 OK CR 64, ¶ 7, 947 P.2d 1090, 1097, *cert. denied,* 524 U.S. 943, 118 S.Ct. 2353, 141 L.Ed.2d 722 (1998). Under this standard, it is clear the magistrate was presented with sufficient evidence justifying the issuance of the arrest warrant in this case, and this proposition is denied.

¶ 12 In Proposition II, Appellant argues his confession to Creek County Sheriff's officers was inadmissible and was obtained in violation of his right to counsel, because at the time of interrogation he was represented by counsel stemming from the charges in Tulsa County. At the time Appellant was transported from Tulsa County to Creek County, the Tulsa County Public Defender's office had been appointed to represent him on the Tulsa County charges and Creek County officers were aware Appellant was represented on those charges when they interviewed him. Before the interview, officers advised Appellant of his *Miranda* rights, and he waived his rights prior to speaking to the officers.

¶ 13 Appellant concedes the Sixth Amendment right to counsel in one case does not invoke the Fifth Amendment right to counsel during interrogation on other unrelated charges. *See McNeil v. Wisconsin,* 501 U.S. 171, 174–183, 111 S.Ct. 2204, 2209–10, 115 L.Ed.2d 158 (1991). However, counsel argues this Court should not interpret the Sixth Amendment so restrictively and urges us to apply the totality of the circumstances test adopted in *Dennis v. State,* 1999 OK CR 23, 990 P.2d 277, to determine whether Appellant could knowingly and voluntarily waive his right to counsel when his court-appointed attorney on other charges in another county was not informed of his arrest and transportation to Creek County.

¶ 14 We restricted our decision in *Dennis* to apply "only where an attorney is present while a defendant is questioned and actively tries to see the defendant, who is not told the attorney is there." *Id.* at ¶ 14, 990 P.2d at 284. "Where the totality of the circumstances reflect that a defendant's decision [to waive counsel] would have been affected had he known an attorney was present, then admission of any statements made during questioning under those circumstances is error." *Id.* at ¶ 20, 990 P.2d at 286; *see also Lewis v. State,* 1984 OK CR 93, 695 P.2d 528.

¶ 15 We find *Dennis/Lewis* inapplicable to this situation. Here, there was no attorney, appointed or retained, trying to speak, or waiting to speak with Appellant regarding the Creek County charges. We also decline to extend *Dennis* to require police officers to contact an attorney known to the defendant because of representation on other unrelated charges. Appellant has not shown admission of his confession to Creek County law enforcement violated his right to counsel or his right against self-incrimination and Proposition II is therefore denied.

■ ¶ 16 In Proposition III, Appellant claims the trial court erred when it admitted Appellant's statements to Creek County law enforcement, because Appellant had previously invoked his right to counsel during his interrogation on Tulsa County charges. In *Pickens* I, we held the Tulsa confession was not obtained in violation of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), because Pickens re-initiated discussion with officers after he had previously requested counsel and thereby waived the previous invocation of the right to counsel. *Pickens*, 1993 OK CR 15, ¶¶ 15–16, 850 P.2d 328, 333–334. We have previously rejected this claim and it is barred by the doctrine of *res judicata*. *See Howell v. State*, 1998 OK CR 53, ¶ 4, 967 P.2d 1221, 1224, *cert. denied*, 528 U.S. 834, 120 S.Ct. 93, 145 L.Ed.2d 79 (1999). Our prior determination that the Tulsa confession was not obtained in violation of Appellant's Fifth Amendment right to counsel precludes the claim that his subsequent interrogation in Creek County was obtained in violation of his Fifth Amendment right to counsel. Accordingly, we find the admission of his confession to Creek County officers did not violate his Fifth Amendment right to counsel and does not require reversal of his convictions. In addition, the admission of Pickens' confession to the Tulsa confessions also does not require vacation of his death sentence, as we have previously ruled the Tulsa confessions were not obtained in violation of Pickens' Fifth Amendment right to counsel. *Pickens, Id.* at ¶¶ 15–16, 850 P.2d at 333–334.

■ ¶ 17 In his fourth proposition of error, Appellant maintains the evidence presented at trial was insufficient to sustain his conviction for first degree murder, because there was insufficient independent evidence to corroborate Appellant's confession. A confession is not admissible under Oklahoma law unless it is supported by "substantial independent evidence which would tend to establish ... [its] trustworthiness...." *Fontenot v. State*, 1994 OK CR 42, ¶ 20, 881 P.2d 69, 77–78, *quoting Opper v. United States*, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954). *See also Short v. State*, 1999 OK CR 15, ¶ 34, 980 P.2d 1081, 1096, *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683; *Rogers v. State*, 1995 OK CR 8, ¶ 35, 890 P.2d 959, 975, *cert. denied*, 516 U.S. 919, 116 S.Ct. 312, 133 L.Ed.2d 215 (1995). "Each material element need not be corroborated by facts independent of the confession and there may be inconsistencies between the facts proven and the facts related in the confession, unless the inconsistencies overwhelm the similarities." *Rogers, id.* "It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." *Opper*, 348 U.S. at 93, 75 S.Ct. at 164.

■ ¶ 18 In this case, the State provided sufficient corroborative evidence independent of Pickens' confession to show its trustworthiness and competence. The store manager testified the store clerk's car was blue and was parked in the lot. Pickens stated in his confession there was a blue car in the lot. Pickens admitted he fired four times, and the store clerk was in fact shot four times. On appeal, Appellant makes much of the fact that five bullets were recovered, not four. However, we find this inconsistency not so glaring as to outweigh the obvious similarity that multiple gunshots were fired. A .38 caliber weapon was found in Pickens' car; the lead bullets recovered were .38 caliber and ballistics could not exclude the possibility they were fired from the gun found in Pickens' car. Pickens admitted he obtained rolled money in the robbery. The store manager testified coin rolls were taken in the robbery. Appellant said the store clerk reached under the counter to get the change and put the money in a brown paper (candy) sack; both the change box and the small

brown sacks were located directly beneath the register. Despite some inconsistencies in Pickens' confession, we find the State presented sufficient independent evidence to corroborate the confession.

¶ 19 When the sufficiency of evidence is challenged on appeal, this Court will determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *See Spuehler v. State,* 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203. We find there was sufficient evidence to support the jury's finding that Appellant committed the crimes charged beyond a reasonable doubt, and Proposition IV accordingly fails.

¶ 20 Next, Appellant contends reversible error occurred when evidence of other crimes was admitted during the first stage of trial. A defendant should be convicted upon evidence of the charged offenses, but other crimes evidence may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. *Burks v. State,* 1979 OK CR 10, ¶ 2, 594 P.2d 771, 772, *overruled in part on other grounds in Jones v. State,* 1989 OK CR 7, ¶ 8, 772 P.2d 922, 925; 12 O.S.1991, § 2404(B). Evidence of other crimes may also be admissible when it is part of the *res gestae* of the crime charged. *Reyes v. State,* 1988 OK CR 50, ¶ 6, 751 P.2d 1081, 1083; *Lalli v. State,* 1994 OK CR 15, ¶ 5, 870 P.2d 175, 177 ("Our post-Evidence code cases leave no doubt as to the continuing validity of the res gestae exception in the context of other crimes evidence.").

¶ 21 The plain language of 12 O.S. 1991, § 2404(B) indicates probative value is not limited to the purposes enumerated in the statute. *See Knighton v. State,* 1996 OK CR 2, ¶ 36, 912 P.2d 878, 889. Prior to admission of the other crimes evidence, the trial court must weigh its probative value against the danger of unfair prejudice. If the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumu-

lative evidence and unfair or harmful surprise, the evidence must be excluded. *Id.;* 12 O.S.1991, § 2403. The admissibility of evidence is within the discretion of the trial judge, and reversal is not warranted absent a clear abuse of discretion. *Ashinsky v. State,* 1989 OK CR 59, ¶ 6, 780 P.2d 201, 204.

¶ 22 Pickens complains the admission of the following evidence violated his state and federal constitutional rights: evidence surrounding Appellant's arrest by Tulsa police officers; testimony by Deputy Elliott that certain items of evidence were in the care and custody of the court "from previous trials;" the jury's exposure to an "unredacted" transcript of Appellant's recorded statement, which contained references to his prior felony convictions, references to facts surrounding his acquisition of the gun, reference to the gun being the same weapon used in the Tulsa robberies, and reference by Appellant that he needed to get back to his cell in Tulsa; Appellant's statement within his recorded confession that he met the man from whom he obtained the gun in the penitentiary; and the receipt by the jury of Jury Instruction 14, which contained the title "Possessing a Firearm After a Felony Conviction–Elements" when Appellant was entitled to bifurcated trial.

¶ 23 As an initial matter, we note the *Burks* notice filed by the State prior to Appellant's first trial set forth with particularity the offenses committed by Appellant in Tulsa County. The notice did not state under what exception the evidence would be offered, but Appellant can hardly claim surprise by the State's use of the evidence surrounding his arrest for those crimes when the State utilized the evidence in the first trial. At trial, defense counsel's objection to the evidence surrounding the arrest was overruled, and the trial court allowed the officers to testify concerning the arrest for the purpose of showing where the gun came from. We find the testimony concerning Appellant's arrest and the discovery of the gun to be properly admissible for that purpose.

¶ 24 Secondly, we find Deputy Elliott's testimony that certain evidence was retained by the court "from previous trials"

did not constitute inadmissible other crimes evidence or an evidentiary harpoon. Defense counsel's objection to the testimony as an evidentiary harpoon [7] was properly overruled and his motion for mistrial properly denied. This statement was not an evidentiary harpoon as it was not calculated to prejudice Mr. Pickens but rather was offered in direct response to defense counsel's inquiry whether the items of evidence were under Elliott's care and control.

¶ 25 The third instance complained of involved the jury's receipt of an unredacted transcript of Appellant's confession. The record shows the unredacted tape of Appellant's confession and the State's transcript of that confession were initially offered into evidence without any objection that the confession contained evidence of other crimes.[8] Counsel stated on the record he preferred the jury not be provided with the transcription, but agreed to handle any incorrect statements during cross-examination. After the State had passed out transcriptions to the jurors and had begun to play the tape, defense counsel objected on the grounds that the statement contained evidence of other crimes. The trial court collected the transcriptions from the jurors, called the court in recess, and then allowed defense counsel to go through the transcription in its entirety and recommend what portions should be redacted. Thereafter, the redacted tape was played for the jury, and the jury followed along with the redacted transcription.

¶ 26 Nothing in the record shows that in fact jurors were exposed to any prejudicial other crimes evidence.[9] The transcript shows the jury had the original unredacted transcription until defense counsel objected to page 7. Further, the jurors only retained the transcription for a short time before the court gathered the transcriptions and recessed for the night. The trial court stated on the record that it did not believe the jurors read ahead in the transcription prior to recess. While the unredacted transcription may have contained the complained of references to other crimes evidence, under the circumstances presented here, we cannot find the jury was actually exposed to that evidence as there is no evidence any juror read that far ahead in the unredacted transcription.

¶ 27 The last complaint regarding the admission of other crimes evidence has more merit. At the close of the first stage evidence, the trial court and the parties argued and settled the jury instructions. Although defense counsel moved to dismiss Count 2 (Feloniously Carrying a Firearm), no objection was made to the proposed instructions to be given on that charge, the jury instructions were read to the jury, counsel made closing arguments, and the jury retired to deliberate. Sometime later, the jury sent Court's Exhibit 8, a note, which read: "In connection with Count 2, Instruction No. 14 regards possessing a firearm after a felony conviction. Since this is part of the instructions, can we assume that he has been previously convicted of a felony. /s Michael Wille."

¶ 28 The trial court stated on the record that the "title" to the original OUJI–CR–6–39 was inadvertently left on the instruction, even though the parties had agreed to modify the instruction to exclude the element of the prior conviction.[10] Defense counsel's motion for mistrial was denied. The trial court submitted a new Instruction No. 14 with a "corrected title," and the trial court explained to the jury the computer printed the instruction incorrectly. The trial court then answered

---

7. Evidentiary harpoons are voluntary statements, made by experienced police officers or other lay witnesses that are willfully jabbed to inject information about other crimes calculated to prejudice the defendant and which do in fact prejudice the defendant. *Lambert v. State*, 1999 OK CR 17, ¶ 47, 984 P.2d 221, 235.

8. Defense counsel objected to the introduction of the confession on the grounds that it was not voluntary and that a proper predicate for its introduction was not established.

9. The other crimes evidence Appellant complains of that was contained within the unredacted transcript referenced his prior felony convictions, referenced facts surrounding his acquisition of the gun, referenced the gun being the same weapon used in the Tulsa robberies, and referenced Appellant's need to get back to his cell in Tulsa.

10. OUJI–CR 2d 6–39 is entitled Possessing A Firearm After A Felony Conviction–Elements.

the jury's question, "No, you may not assume that defendant has previously been convicted of a felony, and, further, that nothing in these instructions should imply that defendant has ever been convicted of a felony."

¶ 29 When a defendant is charged with multiple counts, one or more of which require a prior conviction as an element of the crime, the trial shall be bifurcated. *Chapple v. State*, 1993 OK CR 38, ¶ 18, 866 P.2d 1213, 1217. This mandatory procedure shields the defendant from the prejudicial misuse of his prior convictions by the jury during its determination of guilt in a multi-count trial. Appellant complains the corrected instruction and trial court's answer to the jury's question concerning Jury Instruction No. 14 were "too late" and the jury's exposure to the mis-titled instruction left no doubt Mr. Pickens was a convicted felon. Appellant submits this error requires reversal of his conviction on Count 2. The State completely failed to address this argument. Although we believe the error was inadvertent, we cannot find it was harmless beyond a reasonable doubt; the State offers no argument to persuade us to find the error did not influence the jury or that it had a very slight effect. *Simpson v. State*, 1994 OK CR 40, ¶ 36, 876 P.2d 690, 702 (discussing application of harmless error analysis to non-constitutional errors). Accordingly, we find reversal is warranted on Count 2; it is often impossible to "unring" the bell.

¶ 30 In Proposition VI, Pickens asserts the trial court committed reversible error when it admitted evidence that Tulsa police recovered a pistol from his vehicle without requiring the State to show the seizure of the evidence was made pursuant to a search warrant or to a valid exception to the constitutional requirement for a search warrant. At trial, the defense objected to the admission of the evidence on the ground the State failed to establish a proper predicate for the stop of the vehicle and the resulting search and seizure. To establish a proper predicate for the stop and search, the defense acknowledged the State would have to introduce evidence of other crimes. The defense objected to the admission of the other crimes evidence, and the trial court therefore did not require further predicate for the admission of the evidence. On appeal, Appellant contends the evidence should have been presented to the trial court in a hearing out of the presence of the jury; however, at trial, *no* such request for a hearing outside the jury's presence was made.

¶ 31 At trial, Pickens did not move to suppress the evidence based on an illegal search, but rather objected to its admission because the State did not lay a proper predicate. Whenever a defendant makes a specific objection at trial, no different objections will be considered on appeal. *Wilson v. State*, 1998 OK CR 73, ¶ 64, 983 P.2d 448, 464; *Romano v. State*, 1995 OK CR 74, ¶ 18, 909 P.2d 92, 109, *cert. denied*, 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996). Therefore, we find Pickens has waived this claim. *Hair v. State*, 1979 OK CR 68, ¶ 8, 597 P.2d 347, 349.

¶ 32 Next, in Proposition VII, Pickens argues the trial court committed reversible error when it failed to instruct the jury *sua sponte* on the defense of voluntary intoxication and the "corresponding lesser included non capital offense of second degree felony murder during the course of a robbery by force or fear." At trial, no request was made for these instructions; Appellant has therefore waived all but plain error. *Thornburg v. State*, 1999 OK CR 32, ¶ 13, 985 P.2d 1234, 1242. While the trial court has an obligation to instruct on lesser included offenses and on defenses when warranted by the evidence, in this case the referenced instructions were not warranted by the evidence; therefore, no plain error occurred.

¶ 33 First, while the evidence at trial disclosed Appellant was a chronic user of PCP and may have been under the influence of PCP at the time of the robbery/murder, the trial court properly did not instruct the jury on the defense of voluntary intoxication. When warranted by the evidence, a defendant is entitled to instructions on his theory of defense whether requested or not as long as his theory is tenable as a matter of law. *Kinsey v. State*, 1990 OK CR 64, ¶ 9, 798 P.2d 630, 633. Voluntary intoxication is not a defense to a general intent crime.

*Fairchild v. State,* 1999 OK CR 49, ¶ 76, 998 P.2d 611, 627. Felony murder, with robbery with a dangerous weapon as the underlying predicate crime, is a general intent crime. *Hammon v. State,* 2000 OK CR 7, ¶ 72, 999 P.2d 1082, 1098; *Traxler v. State,* 96 Okl.Cr. 231, 250, 251 P.2d 815, 836 (1953).

■ ¶ 34 Secondly, Appellant was charged with first degree murder while engaged in the commission of a robbery with a dangerous weapon.

Robbery, the predicate felony in second degree felony murder, cannot be accomplished with a dangerous weapon. If it is, the offenses are Robbery with a Dangerous Weapon and first degree felony murder. *Foster v. State,* 1986 OK CR 19, ¶ 31, 714 P.2d 1031, 1039.... Where there is no evidence to support a lesser included offense the court has no right to ask the jury to consider the issue. *Boyd v. State,* 1992 OK CR 40, ¶ 9, 839 P.2d 1363, 1367–68.

*Brown v. State,* 1998 OK CR 77, ¶ 65, 989 P.2d 913, 930. In this case, there is no question the robbery of the Mr. Quik convenience store clerk was accomplished through the use of a dangerous weapon. Accordingly, we find no error occurred when the trial court did not instruct the jury *sua sponte* on second degree felony murder. *Wilson,* 1998 OK CR 73, ¶ 58, 983 P.2d at 463; *Boyd v. State,* 1992 OK CR 40, ¶ 9, 839 P.2d 1363, 1367, *cert. denied,* 509 U.S. 908, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993).

■ ¶ 35 We also find unpersuasive Appellant's argument in sub-proposition VII B that the trial court erred when it did not instruct on the lesser offense of second degree felony murder by robbery by force or fear because the "failure to give the jury the third option of convicting of a lesser included offense" would be violative of *Beck v. Alabama,* 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980) and *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). *Beck* and *Schad* held that "in death cases, the jury must be instructed on lesser included noncapital offenses supported by the evidence, in order to give the jury a viable option between acquittal and a death penalty offense." *Pickens,* 1994 OK CR 74, ¶ 8, 885 P.2d at 682–683. Lesser included

offense instructions need not automatically be given in death cases, but are required only when supported by the evidence. *Charm v. State,* 1996 OK CR 40, ¶ 7, 924 P.2d 754, 759–760, *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1560, 137 L.Ed.2d 707 (1997). To succeed on the claim that the trial court's failure to instruct the jury on lesser included offenses violated *Beck,* Appellant must demonstrate the evidence presented at trial "would permit a rational jury to find him guilty" of the lesser offense. *Hogan v. Gibson,* 197 F.3d 1297, 1307 (10th Cir.1999).

■ ¶ 36 We have already determined there was no question the robbery in this case was accomplished with a dangerous weapon. The trial judge's failure to instruct *sua sponte* on a lesser offense that would require a jury to ignore that evidence and to assume the robbery was accomplished solely through "force or fear" does not violate the principles of *Beck* and *Schad.* This proposition is denied.

■ ¶ 37 In his eighth proposition of error, Appellant argues improper tactics and arguments of the prosecutor denied him of a fair trial and sentencing. Appellant contends the prosecutor argued facts not in evidence, elicited improper hearsay evidence, injected his own opinion and credibility into the trial, improperly shifted the burden of proof, and made improper argument appealing to the passions and prejudices of the jury.

■ ¶ 38 During first stage closing argument, the prosecutor argued facts not in evidence when he stated the videotape of the crime scene showed coins on the ground, and not blood droplets as a defense witness had testified. No objection was made to this allegedly improper argument and we review for plain error only. *Turrentine v. State,* 1998 OK CR 33, ¶ 66, 965 P.2d 955, 975, *cert. denied,* 525 U.S. 1057, 119 S.Ct. 624, 142 L.Ed.2d 562 (1998). We find this argument was within the wide range of proper comment on the evidence presented as the videotape clearly depicts coins on the sidewalk.

■ ¶ 39 At trial, the defense attacked the State's investigation of the homicide/robbery because little or no forensic investiga-

tion and testing was conducted on, what the defense argued was, available forensic evidence. In first and second stage closing arguments, the prosecutor commented on the defendant's power to subpoena and his failure to call witnesses to contradict the State's evidence that the investigation was performed properly and available evidence properly preserved. Appellant complains the argument improperly shifted the burden of proof by misleading the jury that he had some obligation to produce evidence. Again, no objection was made and we review for plain error only. *Turrentine, id.* Comment on a defendant's access to evidence and witnesses is permissible, and under the facts presented here, we find no plain error occurred. *Thomas v. State,* 1991 OK CR 58, ¶ 24, 811 P.2d 1337, 1344, *cert. denied,* 502 U.S. 1041, 112 S.Ct. 895, 116 L.Ed.2d 798 (1992); *Estes v. State,* 1974 OK CR 160, ¶ 7, 525 P.2d 1362, 1365.

¶ 40 During closing argument after the second stage of trial, the prosecutor asked the jury to remember that the last person the victim saw was the defendant and to remember the last sound the victim heard was the sound of thunder from the gun; the prosecutor asked the jury to "let Darrin Lynn Pickens hear the thunder that comes from this jury, and let the last words ... be that we, the jury fix his punishment at death." Appellant complains this argument was an improper appeal to the passion and prejudice of the jury. While the prosecutor should not encourage the jury to impose the death penalty out of sympathy for the victims, *see Le v. State,* 1997 OK CR 55, ¶ 53, 947 P.2d 535, 554–555, *cert. denied,* 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998), this comment was not objected to and we find it did not rise to the level of plain error. *Hooper v. State,* 1997 OK CR 64, ¶¶ 55–56, 947 P.2d 1090, 1111, *cert. denied,* 524 U.S. 943, 118 S.Ct. 2353, 141 L.Ed.2d 722 (1998).

¶ 41 Appellant's next complaint is about comments which were made when the prosecutor asked officer Elliott about a five dollar bill with, what the defense argued was, a blood stain. On redirect examination, the prosecutor asked officer Elliott, "Is it not true, sir, that you contacted me after that and showed me that five dollar bill?" Elliott responded, "Yes, sir." The prosecutor then asked, "And did we agree that it did not appear to be blood at that time?" The defense objected to the comment as "not a proper question," the prosecutor restated the question and defense counsel did not request any further relief. Thereafter, in response to a question about what was done with the bill, the witness answered "nothing" and stated, "I believe because you looked at it and didn't think it was blood either." No objection was made to the witness' answer. Appellant contends the prosecutor injected his personal opinion and credibility into the trial and elicited improper hearsay evidence which violated his right of confrontation.

¶ 42 Although Appellant characterizes the prosecutor's conduct as violative of the advocate-witness rule,[11] we believe the prosecutor's conduct constituted impermissible vouching as the prosecutor himself did not testify as witness, but rather phrased his questions in a manner that tended to bolster the credibility of the State's witness. *Cargle v. State,* 1995 OK CR 77, ¶ 56, 909 P.2d 806, 823, *cert. denied,* 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996) (a prosecutor may not personally vouch for the credibility of its witnesses). "Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *Nickell v. State,* 1994 OK CR 73, ¶ 7, 885 P.2d 670, 673, *quoting Freeman v.*

---

11. Generally stated, the advocate-witness rule requires the roles of advocate and witness be kept separate and an advocate should be called as a witness only in circumstances of utmost necessity. *See Boyd v. State,* 1992 OK CR 40, ¶ 21, 839 P.2d 1363, 1369–70; *Cavaness v. State,* 1978 OK CR 76, ¶ 11, 581 P.2d 475, 478, *cert. denied,* 439

U.S. 1117, 99 S.Ct. 1024, 59 L.Ed.2d 76 (1979). This is so because evidence given by a prosecutor could easily carry more weight with a jury than the evidence of other witnesses. *See Brown v. State,* 1973 OK CR 109, ¶ 10, 506 P.2d 1396, 1399.

*State*, 1994 OK CR 37, ¶ 18, 876 P.2d 283, 288, *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). The prosecutor's questions relating to the five dollar bill effectively told the jury it could rely on and believe the witness' testimony because the witness' lack of investigation into the five dollar bill was in reliance upon the State's attorney's opinion of the evidence.

■ ¶ 43 Even though the prosecutor's questions tended to bolster this witness' testimony, we find the conduct does not require relief. The initial questions and answer were objected to, the prosecutor restated his question, and the defense requested no further relief. No further objection was made to the witness' final comment ["I believe because you looked at it and didn't think it was blood either."] and Appellant waived any objection to the witness' final answer.

■ ¶ 44 Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect of the conduct deprived the defendant of a fair trial. *Washington v. State*, 1999 OK CR 22, ¶ 41, 989 P.2d 960, 974. Having reviewed each of the alleged instances of misconduct, we find none, either singularly or cumulatively, warrants relief and this proposition of error is denied.

■ ¶ 45 In Proposition IX, Appellant argues he has been denied a fair opportunity for appellate review of his convictions and sentence because the record of trial proceedings does not contain two "private bench conversations between two potential jurors and the trial court." Following each of these private bench conversations, a potential juror was excused for cause. No objection to this procedure was made at trial and defense counsel did not make any sort of record regarding the excusal of these jurors. While a complete stenographic record should be taken in all capital cases, *Van White v. State*, 1988 OK CR 47, 752 P.2d 814, 821, failure to transcribe portions of a capital case is not *per se* reversible error. *See Parker v. State*, 1994 OK CR 56, ¶ 27, 887 P.2d 290, 294, 295. While this Court *strongly* recommends all portions of the trial be transcribed, including bench conferences and conferences in cham-

bers, we cannot conclude that any error occurred in this case as a result of these two unrecorded conferences during voir dire. Appellant has raised no error relating to jury selection and has not demonstrated the trial court's excusal of either of these two jurors resulted in error. As Appellant has not demonstrated any reason for reversal on this ground and has not shown our ability to conduct the mandatory sentence review has been impeded in any way, we find this proposition does not warrant relief. *Id.*

¶ 46 Appellant also claims the record does not show he knowingly and intelligently waived his right to present mitigating evidence in the second stage of trial; and, as a result, the death penalty was imposed in violation of his Eighth and Fourteenth Amendment rights. After the State presented its evidence in aggravation, trial counsel advised the judge Mr. Pickens was "adamant" that he did not want his mother or any of his siblings called to testify for him in second stage proceedings. The trial judge asked Mr. Pickens whether his counsel's statements were correct and Mr. Pickens responded, "Yes." After the trial court inquired whether both trial counsel concurred with one another regarding Mr. Pickens' wishes, the trial court made the following inquiry:

THE COURT: All right, and Mr. Pickens, you've heard what both attorneys have said here, and is that correct?

MR. PICKENS: Yes.

THE COURT And its your wish not to follow their recommendation to call family members to testify on your behalf?

MR. PICKENS: Yes.

THE COURT: Okay. Is there any record from the State?

MR. NELSON: No, Your Honor.

Following the trial court's inquiry, Mr. Pickens' trial counsel in fact called two witnesses in mitigation and requested Dr. Murphy's and Dr. Hesson's first stage testimony be incorporated into defendant's second stage case in chief. Counsel's request was granted without objection from the State. Thereafter, the defense announced rest.

■ ¶ 47 Without question, mitigating evidence is crucial to a sentencer in a capital case. However, the Eighth Amendment does not require mitigating evidence must be presented in a capital trial, only that the defendant be given the opportunity to present such evidence. *Wallace v. State*, 1995 OK CR 19, ¶ 18, 893 P.2d 504, 512–513, *cert. denied*, 516 U.S. 888, 116 S.Ct. 232, 133 L.Ed.2d 160.

¶ 48 Most capital cases are won in the second stage and not in the guilt-innocent stage. Counsel may well want to present little evidence in the first stage, so as to not offend the jury. If this is the trial strategy, then counsel must work extra hard in the second stage to save the life of the defendant. In an effort to assist the trial court when a defendant refuses to allow the presentation of mitigating evidence in the sentencing stage, in *Wallace*, we established guidelines to be followed by a defendant and counsel if an election is made not to present mitigating evidence.[12] *Id.*, 1995 OK CR 19, ¶¶ 21–22, 893 P.2d at 512–513. Failure to hold the mandatory *Wallace* hearing does not require automatic reversal. *Fitzgerald v. State*, 1998 OK CR 68, ¶ 40, 972 P.2d 1157, 1172–1173. In *Fitzgerald*, where *no Wallace* hearing was held, we stated,

> if, from the record, it is apparent a defendant (a) understands the difference between life and death, (b) understands and appreciates the vital importance of mitigating evidence in capital proceedings, and (c) voluntarily and intelligently waives all right to present mitigating evidence, then

failure to hold a *Wallace* hearing may be harmless.

*Id.*

■ ¶ 49 Mr. Pickens' case is not one where *no* mitigation evidence was presented. In fact, substantial mitigation evidence was presented which addressed Mr. Pickens' level of mental functioning as well as his history of drug use. Although the trial court's inquiry into Mr. Pickens' desire that no family member testimony be presented fell short of the guidelines set forth in *Wallace*, under the circumstances presented here, we find the inquiry was sufficient. His trial counsel stated on the record:

> He is a client, he does understand what's going on, and his rationale for not wanting to put his family on, although we disagree with it, is well thought out. He's thought it out, had lots of time to think about it, and it's a decision he's made and maintained that decision for a long period of time. It's not something he decides one day and changes his mind the next. He's been consistent about this for the three years that I've known him in this case. . . .

The record establishes Mr. Pickens knew what evidence was available through family members and clearly desired to waive presentation of that particular mitigating evidence.

¶ 50 Although the trial court did not specifically define mitigating evidence and go over Mr. Pickens' right to present that evidence, it is clear from the history of this case and the record that Mr. Pickens understood the difference between life and death, understood the importance of presenting mitigating evidence, and understood the consequences of

12. The guidelines set forth in *Wallace* are as follows: (1) The court must inform the defendant of the right to present mitigating evidence, and what mitigating evidence is; (2) the court must inquire both of the defendant and his attorney (if not pro se) whether he or she understands these rights; (3) the court should also inquire of the attorney if he or she has attempted to determine from the defendant whether there exists any evidence which could be used to mitigate the aggravating circumstances proven beyond a reasonable doubt by the prosecution; (4) if such information has been given, the attorney must advise the court what that mitigating evidence is; if the defendant has refused to cooperate, the attorney must relate that to the court; (5) the trial court must inquire of a defendant and make a determination on the record whether the defendant understands the importance of mitigating evidence in a capital sentencing scheme, understands such evidence could be used to offset the aggravating circumstances proven by the prosecution in support of the death penalty, and the effect of failing to present that evidence; (6) after being assured the defendant understands these concepts, the court must inquire of the defendant whether he or she desires to waive the right to present such mitigating evidence; and (7) finally, the court should make findings of fact pursuant to *Grasso v. State*, 1993 OK CR 33, 857 P.2d 802, of the defendant's understanding and waiver of rights.

his decision not to call family members to testify on his behalf. In light of trial counsels' statements and Mr. Pickens' responses to the trial court's inquiry, we find any error in the trial court's failure to strictly follow the guidelines set forth in *Wallace* was harmless. *Fitzgerald*, 1998 OK CR 68, ¶ 40, 972 P.2d at 1173. Accordingly, we find Appellant's tenth proposition of error does not warrant relief.

¶ 51 In Proposition XI, Appellant argues his death sentence should be vacated because the execution of the mentally retarded constitutes cruel and unusual punishment. This claim was rejected in *Lambert v. State*, 1999 OK CR 17, ¶ 59, 984 P.2d 221, 238, *cert. denied*, 528 U.S. 1087, 120 S.Ct. 816, 145 L.Ed.2d 687 (2000), and we decline to revisit the issue.

¶ 52 Appellant contends his death sentence must be vacated because Oklahoma's "murder to avoid arrest or prosecution" aggravating circumstance is unconstitutionally vague and overly broad as construed by this Court in violation of the Eighth and Fourteenth Amendments. He argues the aggravator is broadly applied to anyone who commits a murder during the course of a felony and creates a presumption of guilt which requires the defendant to show his motive in killing was not to avoid arrest or prosecution.

¶ 53 We have previously held this aggravating circumstance is sufficiently limited by the requirements that: (a) a predicate crime existed, apart from the murder, from which the defendant sought to avoid arrest/prosecution; and (b) the State presented evidence establishing the defendant's intent to kill in order to avoid arrest/prosecution. *Alverson v. State*, 1999 OK CR 21, ¶ 75, 983 P.2d 498, 520, *cert. denied*, 528 U.S. 1089, 120 S.Ct. 820, 145 L.Ed.2d 690 (2000). We decline to revisit the issue. The determination of the defendant's intent may be inferred from circumstantial evidence. *LaFevers v. State*, 1995 OK CR 26, ¶ 48, 897 P.2d 292, 311, *cert. denied*, 516 U.S. 1095, 116 S.Ct. 820, 133 L.Ed.2d 763 (1996). The State presented sufficient evidence to support both prongs of this aggravator. From the evidence showing Appellant frequented the Mr. Quik store, the jury could reasonably infer he killed Hayes to keep him from being identified as the person who robbed the store. Proposition XII is denied.

¶ 54 Next, Appellant challenges the application of the "continuing threat" aggravator as unconstitutionally vague and overbroad, acknowledges our prior holdings upholding the application of this aggravator and asks this Court to reconsider. He complains the Oklahoma Uniform Jury Instruction, OUJI–CR 2d. 4–74, defining the "continuing threat" aggravator failed to properly set forth the requirement that the jury had to find that the defendant would commit "future acts of violence" and asserts the use of the term "probability" is confusing and causes the instruction to be overbroad in its application. He argues that "probability" is a statistical term and its use in the statutory sentencing scheme "violates the statistical rule of probability."

¶ 55 This Court has previously upheld the constitutionality of this aggravator and we decline to reconsider our position on this issue. *See, e.g., Welch v. State*, 1998 OK CR 54, ¶ 59, 968 P.2d 1231, 1248. Further, we reject Appellant's arguments relating to the use of OUJI–CR 2d. 4–74 for the reasons set forth in *Bland v. State*, 2000 OK CR 11, ¶¶ 82–87, 4 P.3d 702, 724–725, *cert. denied*, — U.S. —, 121 S.Ct. 832, 148 L.Ed.2d 714 (2001). Proposition XIII is denied.

¶ 56 Noting the use of mandatory language in the jury instructions dealing with aggravating circumstances and the use of permissive language in the instructions dealing with mitigating circumstances, in Proposition XIV, Appellant argues the instructions on the issue of mitigation permitted the jurors to ignore the mitigating evidence altogether, and seriously diminished the effect the mitigating evidence presented in the case. We have consistently rejected the claim that instructing the jury they "may consider" mitigating evidence creates a doubt as to the jury's constitutional duty to consider such evidence and recently reaffirmed those holdings in *Welch v. State*, 2000 OK CR 8, ¶ 49, 2 P.3d 356, 374, *cert. denied*, — U.S. —, 121 S.Ct. 665, 148 L.Ed.2d 567 (2000).

¶ 57 In his fifteenth proposition of error, Appellant argues the accumulation of error in this case deprived him of due process of law and a reliable sentencing proceeding and necessitates reversal of his conviction or modification of his sentence. No error occurred during the first or second stage of trial which warrants reversal of Appellant's conviction for murder.

### MANDATORY SENTENCE REVIEW

¶ 58 In accordance with 21 O.S.1991, § 701.13(C), we must determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and whether the evidence supports the jury's finding of aggravating circumstances. The jury found the existence of three aggravating circumstances: (1) that Pickens had previously been convicted of a felony involving the use or threat of violence against the person; (2) that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution; and (3) that there existed the probability that Pickens would commit criminal acts of violence that would constitute a continuing threat to society. Upon review of the record, we find sufficient evidence was presented to prove each of the aggravating circumstances alleged and we cannot say the sentence of death was imposed because the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S .1991, § 701.13(C).

### DECISION

¶ 59 Finding no error warranting reversal of Appellant's conviction for First Degree Murder and his sentence of death, the Judgment and Sentence for First Degree Murder (Count I) entered in Creek County District Court, Case No. CRF 90–66, is hereby **AFFIRMED**; the Judgment and Sentence for Felonious Possession of a Firearm (Count II) is **REVERSED AND REMANDED FOR A NEW TRIAL.**

STRUBHAR, P.J.: concurs.

LUMPKIN, V.P.J.: concur in part/dissent in part.

CHAPEL, J.: concur in part/dissent in part.

LILE, J.: concur in part/dissent in part.

LUMPKIN, Vice Presiding Judge: Concur in Part/Dissent in Part.

¶ 1 I concur in the Court's decision to affirm the judgment and sentence in Count I, Murder First Degree. However, I agree with Judge Lile that the trial court took appropriate remedial action to correct the error in the heading of Instruction 14 and any error is harmless.

¶ 2 In addition, in its discussion of Proposition VII, the Court partially cites the holding in *Hogan v. Gibson*, 197 F.3d 1297, 1307 (10th Cir.1999), regarding the request to provide an instruction on a lesser included offense. A more complete statement of the law applicable is set forth in *Gilson v. State*, 2000 OK CR 14, ¶ 113, 8 P.3d 883, 917, where we held:

> In determining the sufficiency of the evidence to support a lesser offense we look at whether the evidence might allow a jury to acquit the defendant of the greater offense and convict him of the lesser. *See Hogan v. Gibson*, 197 F.3d 1297, 1305 (10th Cir.1999) *citing Beck v. Alabama*, 447 U.S. 625, 636, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980). Only if there is evidence which tends to negate an element of the greater offense, which would reduce the charge, should instructions on a lesser included offense be given. *See Fairchild*, 998 P.2d at 627. *See also United States v. Scalf*, 708 F.2d 1540, 1546 (10th Cir.1983) ("a lesser included offense instruction should not be given unless there is evidence to support a finding that the lesser offense was committed while the greater offense was not.").

CHAPEL, Judge, Concurring in Part and Dissenting in Part:

¶ 1 I concur in reversing Count 2. However, I dissent to affirming the conviction and sentence for Count 1.

¶ 2 Pickens was in custody in the Tulsa county jail on an unrelated murder charge when he was arrested by Creek County offi-

cers for a robbery/murder at the Mr. Quick 21 convenience store in Sapulpa. Prior to this arrest Pickens had invoked his Fifth Amendment right to counsel, during a custodial interrogation regarding the Tulsa case.[1] In addition, Pickens had been provided with a lawyer from the Tulsa Public Defender's Office to represent him in the Tulsa County case, and the Creek County officers were aware of this representation. Notwithstanding this knowledge, the officers did not make any effort to notify this Tulsa counsel that Pickens was being arrested for a similar robbery/murder in Creek County and that he was about to be interrogated regarding this offense. Nor did anyone from Creek County specifically inform Pickens that he could consult with his Tulsa counsel regarding the new charges.

¶ 3 As noted in this Court's earlier opinion in this case, Pickens was interviewed two times on March 9, 1990, after being brought from Tulsa to the Creek County Police Department.[2] During the first interview, which occurred before lunch and before Pickens was arraigned, Pickens confessed to the robbery and murder in Sapulpa, after being given *Miranda* warnings. After a lunch break Pickens was arraigned and then returned to the Creek County Police Department. He then confessed a second time to the Sapulpa crimes, this time admitting even

more damaging facts. The second confession, which was not proceeded by *Miranda* warnings, was videotaped.

¶ 4 This Court reversed Pickens' original conviction for the Sapulpa crimes, because the videotape of this confession was admitted into evidence at trial, in violation of his Sixth Amendment right to counsel.[3] This Court concluded that the admission of this videotape was not harmless error.[4]

¶ 5 The issue now before this Court is the admission into evidence of Pickens' initial, pre-arraignment confession during his re-trial for the Sapulpa crimes. I conclude that the admission of this confession was likewise a violation of Pickens' constitutional rights, which cannot be deemed harmless.

¶ 6 First, I would hold that the custodial interrogation that resulted in this confession was held in violation of Pickens' Fifth Amendment right to counsel. This Court has already recognized that Pickens invoked his right to counsel during an initial interrogation following his arrest in Tulsa.[5] It is well-established that an accused who has requested counsel under these circumstances cannot be approached for further questioning.[6] Although a majority of this Court found that Pickens subsequently "re-initiated" communications with the police,[7] I disagreed with this finding.[8] Because I do not

---

**1.** In *Pickens* I, 1993 OK CR 15, ¶ 15, 850 P.2d 328, 333, this Court held that Pickens invoked his *Miranda*-based right to counsel during a custodial interrogation regarding the Tulsa robbery and shooting for which he was initially arrested (at the Circle K store at 61st and Union). Pickens was later charged and convicted, as part of the same Tulsa case, with a robbery/murder at another Tulsa convenience store, which had been committed some hours earlier. *Id.* at 331.

**2.** This Court summarized the specific factual circumstances surrounding these two interviews in *Pickens* II, 1994 OK CR 74, ¶¶ 1–4, 885 P.2d 678, 680–82.

**3.** *Id.* at 681–82.

**4.** *Id.* at 682. In addition, the Tenth Circuit Court of Appeals has subsequently held that the admission of this same videotape during the sentencing-phase of Pickens' trial for the Tulsa crimes was likewise a non-harmless violation of his right to counsel, and that court struck down his capital sentence for the Tulsa murder on this basis.

*See Pickens v. Gibson*, 206 F.3d 988, 995–97 (10th Cir.2000).

**5.** *Pickens* I, 850 P.2d at 333.

**6.** *See Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 ("[A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."); *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (when accused requests counsel during custodial interrogation, police may not re-initiate interrogation, even after counsel has been provided).

**7.** *Pickens* I, 850 P.2d at 333–34.

**8.** My reasons for rejecting the Court's conclusion that Pickens "re-initiated" communications with the police are articulated in my concurrence in the Tulsa case, which is incorporated herein by

agree that Pickens re-initiated communications with the police, or that he validly waived the right to counsel that he had previously invoked, I conclude that the initial confession in the Creek County case was vitiated by the failure of the Creek County officers to respect Pickens' prior custodial request for counsel.[9] Because Pickens invoked his *Miranda*-based right to counsel and remained in police custody, police were prohibited from approaching him regarding the Tulsa crimes or any other crime.[10]

¶ 7 Second, I would hold that the Sixth Amendment right to counsel, which had attached in the Tulsa case, was violated by the failure of the Creek County officers to contact Pickens' Tulsa counsel or specifically inform Pickens that he had a right to consult with this counsel. I here disagree with the Supreme Court's finding in *McNeil v. Wisconsin* that the Sixth Amendment right is "offense specific."[11] I find this to be an unrealistic and unreasonable interpretation of this constitutional right.

¶ 8 As this case aptly demonstrates, one cannot assume that seemingly "distinct" offenses will remain distinct as a case proceeds. In fact, the representation and defense of Pickens' case in Tulsa was specifically and substantially impacted by his un-represented confessions to the Creek County crimes, since one of these confessions was actually admitted during the sentencing-stage of his trial for the Tulsa offenses.[12] Furthermore, it is widely recognized that separate offenses are often treated as a group, for the purposes of negotiating and implementing plea bargains, as well as for sentencing determinations. Interpreting the Sixth Amendment right to the assistance of counsel without regard to the realities of how distinct offenses are regularly treated within the context of the criminal justice system unnecessarily frustrates the purposes of the Sixth Amendment right. In particular, it unfairly subjects a custodial accused to unrepresented interrogations that may severely compromise a case in which he is already involved and for which he has already obtained counsel.[13] Recognizing that in a case such as this one, where officers

reference. *See id.* at 344–46 (Chapel, J., specially concurring).

9. *See Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) (suspect in custody who has invoked right to counsel during custodial interrogation on one case cannot be questioned regarding that case or any other case until counsel has been provided).

10. Although the Supreme Court held in *McNeil v. Wisconsin,* 501 U.S. 171,. 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), that an accused's invocation of his Sixth Amendment right to counsel did not likewise invoke his Fifth Amendment (*Miranda*-based) right to counsel regarding questioning for a separate crime, *McNeil* did not involve a defendant who had previously invoked his Fifth Amendment right to counsel. *Id.* at 2206 (noting that accused "did not request an attorney" during his initial custodial interrogation). Consequently, the *McNeil* Court's conclusion that the Sixth Amendment right to counsel is "offense specific," meaning that the invocation of this right regarding one offense does not affect the ability of police to initiate interrogation regarding other offenses, *id.* at 2207, does not impact the current analysis. The *McNeil* Court itself specifically recognized that the Fifth Amendment right to counsel during custodial interrogation and the corresponding *"Edwards* rule" are *"not* offense specific." *Id.* at 2208 (emphasis in original). "Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one of-

fense, he may not be reapproached regarding *any* offense unless counsel is present." *Id.* (emphasis in original) (citing *Arizona v. Roberson* ).

11. *Id.* at 2207.

12. The significance of this impact is highlighted by the Tenth Circuit's reversal of Pickens' capital sentence in the Tulsa case, based upon the unconstitutional admission of the (second) Creek County confession. *See* note 4 *supra.*

13. In *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), the Supreme Court held that inmates in administrative detention for commission of a crime did not have a Sixth Amendment right to counsel prior to indictment, because formal adversarial proceedings had not yet commenced against them. *Id.* at 2297–98. The Court reasoned:

It is only at that time "that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."

*Id.* at 2298 (*quoting Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). In the case of an accused like Pickens, who has already been formally charged with one crime

are fully aware that a custodial accused has already obtained counsel in another case, the Sixth Amendment right should include, at a minimum, either contacting this known counsel or specifically informing the accused that he has the right to consult with this counsel, prior to being interrogated regarding a different offense, would not unduly hamper police investigations or compromise legitimate confessions.

¶ 9 Furthermore, if the Sixth Amendment right to counsel will not be recognized to extend this far, I would hold that the Oklahoma Constitution does reach this far, in order to give full and operative protection to the right of an accused to be represented and assisted by his chosen or appointed counsel.[14]

¶ 10 Pickens also asserts that it is unconstitutional to execute him because he is mentally retarded.[15] In *Lambert v. State*,[16] a majority of this Court declined to find that the execution of the mentally retarded violated either the United States Constitution or our Oklahoma Constitution. The Court's entire reasoning was as follows: "In light of *Penry v. Lynaugh*, we decline to grant relief."[17] In *Penry v. Lynaugh*,[18] the Supreme

Court held that the Eighth Amendment did not categorically prohibit execution of the mentally retarded.[19] Although I concurred in affirming Robert Lambert's convictions, I dissented from this Court's refusal in *Lambert* to recognize that our State constitution forbids execution of the mentally retarded.[20]

¶ 11 I continue to firmly believe that the execution of the mentally retarded, like the execution of children and the insane, is both cruel and unusual, and violates our common, evolving sense of decency. Experts who testified at Pickens' trial estimated his mental age to be approximately that of a nine year-old child.[21] I conclude, therefore, that it is no more acceptable to execute Pickens than it is to execute a nine year-old child.

¶ 12 I am hopeful that perhaps the evolution of the law that has occurred since the 5–4 *Penry* decision will persuade our nation's highest court that our societal standards of decency have indeed evolved and matured to the point that the Court can confidently hold that the execution of the mentally retarded does violate the Eighth Amendment.[22] If, as recognized by the *Penry* majority, it "was well settled at common law that 'idiots,' as

and is about to be charged with another, the government has already committed itself to prosecute; the adverse positions of the government and the accused have already solidified; and the accused is already faced with the prosecutorial forces of organized society and immersed in the intricacies of substantive and procedural criminal law. When Pickens was interrogated without his appointed counsel in Creek County, he was already "in a situation where the results of the confrontation 'might well settle the accused's fate and reduce the trial itself to a mere formality.' " *Id.* (*quoting United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). The un-represented confession of Pickens to the Creek County robbery/murder arguably rendered both his Creek County trial and the capital stage of his Tulsa trial "a mere formality."

14. *See* Okla. Const., art. II, sect. 20.

15. The State does not challenge Pickens' assertion that he is mentally retarded.

16. 1999 OK CR 17, 984 P.2d 221.

17. *Id.* at 238.

18. 492 U.S. 302, 109 S.Ct. 2934, 2954, 106 L.Ed.2d 256 (1989).

19. Four justices dissented in *Penry*, based upon their conclusion that the Eighth Amendment

does prohibit the execution of the mentally retarded. *See* 109 S.Ct. at 2958–63 (Brennan, J., concurring in part and dissenting in part); *id.* at 2963 (Stevens, J., concurring in part and dissenting in part). The Supreme Court has recently granted a new petition for certiorari in the *Penry* case. *See Penry v. Johnson*, —— U.S. ——, 121 S.Ct. 563, 148 L.Ed.2d 483 (2000).

20. My separate opinion in Lambert, which concludes that Article II, Section 9 of the Oklahoma Constitution prohibits execution of the mentally retarded, is incorporated herein by reference. *See Lambert*, 984 P.2d at 240–44 (Chapel, J., concurring in part and dissenting in part).

21. Although my dissent from the Court's affirmance of Pickens' convictions does not rely on this fact, the limited mental capacity of Pickens further illustrates his need for counsel as a "medium" between himself and the State. *Cf. Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985) ("The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State").

22. In *Penry*, Justice O'Connor's opinion for the Court majority recognized that the Eighth Amendment's prohibition against cruel and un-

well as 'lunatics,' were not subject to punishment for criminal acts committed under those incapacities," [23] where "idiocy was understood as 'a defect of understanding from the moment of birth,' " [24] it surely cannot violate recognized canons of constitutional interpretation to hold that persons whose understanding is so impaired that they are classified as "mentally retarded" should not be subject to the ultimate penalty.[25] If the United States Constitution does not prohibit this barbaric and inhumane practice, I would hold that our State constitution does.

¶ 13 I dissent from the Court's affirmance of Pickens' convictions, based upon the non-harmless use of his unconstitutionally obtained confession at trial; and from the Court's affirmance of Pickens' capital sentence, based upon the district court's non-harmless allowance into evidence of unconstitutionally obtained confessions from the Tulsa and Creek County cases, and based upon my conclusion that the execution of mentally retarded persons violates both our federal and State constitutions.

LILE, J.: Concurs In Part/Dissents in Part

¶ 1 I concur in affirming the conviction and sentence for First Degree Murder. I cannot agree that the judgment and sentence for Felonious Possession of a Firearm should be reversed. The trial court took proper remedial action concerning the error in Instruction No. 14, and I find the error harmless. *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690.

usual punishment "recognizes the 'evolving standards of decency that mark the progress of a maturing society.' " 109 S.Ct. at 2953 (citations omitted). Her opinion also acknowledged that "[t]he clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures." *Id.* Hence the Court relied upon the paucity of jurisdictions (two states and the federal government) that had acted to ban execution of the mentally retarded. *Id.* at 2955. My separate opinion in *Lambert* catalogs the substantial development of the law in this area since 1989, including the ten additional death-penalty states that have acted to ban the execution of retarded persons, as well as

**23.** *Id.* at 2953.

**24.** *Id.* (citation omitted).

**25.** The *Penry* majority acknowledged that "[i]n its emphasis on a permanent, congenital mental deficiency, the old common law notion of 'idiocy,' bears some similarity to the modern definition of mental retardation." 109 S.Ct. at 2954 (citation omitted).